UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DANIEL SUDNICK, | ) | |
| Plaintiff, | ) ) ) ) ) ) | |
| v. | ) ) | Civil Action No. 06-00654 (ESH) |
| DEPARTMENT OF DEFENSE and JOHN A. SHAW, | ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM IN SUPPORT OF
<u>DEFENDANT JOHN A. SHAW'S MOTION TO DISMISS</u>**

Defendant John A. Shaw, by and through undersigned counsel, respectfully moves the Court to dismiss Counts Four (Defamation), Five (False Light Invasion of Privacy), Six (Intentional Infliction of Emotional Distress) and Seven (Negligent Infliction of Emotional Distress) of the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and for failure to state claims upon which relief can be granted, for the following reasons; *first*, Counts Four through Seven are barred by the applicable statute of limitations; and *second*, even if plaintiff's claims had been brought within the statute of limitations (and they were not), Dr. Shaw possesses absolute immunity from those claims under the Westfall Act, 28 U.S.C. § 2679, because they allege torts committed within the scope of his employment as Deputy Undersecretary of Defense.

## BACKGROUND

The present action concerns claims by Daniel Sudnick, a former Senior Adviser to the Iraqi Ministry of Communications under the Coalition Provisional Authority,[1] Compl. ¶ 6, against the United States Department of Defense and former Deputy Undersecretary of Defense John A. Shaw. Plaintiff's Complaint arises out of an alleged scheme by Dr. Shaw "[f]rom his official office within the Office of the Secretary of Defense (OSD) using his concurrent position as a Deputy DoD Inspector General," Compl. ¶ 13, to make "illegal disclosures to various media reporters and outlets" of an official Department of Defense Inspector General Report and related statements. Compl. ¶¶ 21, 23.[2] Plaintiff contends that these materials, which he variously characterizes as a "report of investigation" and as "DoD Inspector General/OSD raw or incomplete preliminary investigative information and other investigative materials," and others characterize as "an official DoD report," a "DoD Inspector General Report," and a "DoD IG report," Compl. ¶¶ 13, 21, 23, contained false and inaccurate allegations that plaintiff had been offered or had received bribes during his tenure as the CPA's Senior Adviser to the Ministry of Communications. Compl. ¶ 21.

Plaintiff's Complaint alleges that Dr. Shaw's disclosures occurred on seven specific dates in April, May, and June 2004, Compl. ¶ 23, and, as a consequence, three news stories – on May 9, 2004; June 6, 2004; and March 29, 2005 – falsely reported that plaintiff received bribes in connection with his Iraqi telecommunications work. Compl. ¶ 24. Notably, although plaintiff asserts that each of these stories "reported that Plaintiff Sudnick received bribes," *id.*, the May 9th

---

[1] The Coalition Provisional Authority, or CPA, was the former occupation government of Iraq. Compl. ¶ 6.

[2] The Complaint contains two paragraphs numbered 23. Unless otherwise noted, discussion of paragraph 23 in this Memorandum refers to the first (and longer) of the two paragraphs.

and June 6th stories do not mention plaintiff *at all*[3], while the March 29th story appears to state only that "[t]here remain numerous allegations of payoffs and kickbacks . . . to a variety of decision makers, including . . . Dr. Daniel Sudnick." Compl. ¶ 24(c). Plaintiff nevertheless contends that these disclosures harmed him, Compl. ¶¶ 32, 34, 35, and asserts claims against the Department of Defense for violation of the Privacy Act and against Dr. Shaw for common-law defamation, false light invasion of privacy, and intentional and negligent infliction of emotional distress.

## ARGUMENT

### I. EACH OF PLAINTIFF'S CLAIMS AGAINST DR. SHAW IS TIME-BARRED UNDER DISTRICT OF COLUMBIA LAW.

#### A. District of Columbia Statute of Limitations Law Applies to Plaintiff's Tort Claims Against Dr. Shaw.

Plaintiff alleges no federal claims against Dr. Shaw in this action, but instead invokes this Court's supplemental jurisdiction under 28 U.S.C. § 1367 to assert state law tort claims against him. Compl. ¶ 1. In evaluating state law claims under this Court's supplemental jurisdiction, this Court must apply the choice-of-law principles of the District of Columbia, the forum jurisdiction in which it sits. *See* Young Women's Christian Ass'n of the Nat'l Capital Area, Inc. v. Allstate Ins. Co., 275 F.3d 1145, 1150 (D.C. Cir. 2002); Jin v. Ministry of State Security, 254 F. Supp. 2d 61, 68 (D.D.C. 2003); Nix v. Hoke, 139 F. Supp. 2d 125, 132 n.4 (D.D.C. 2001).

---

[3] *See* Bill Gertz, *Iraqi Probed in Rigging of Cell Phone Contracts*, The Washington Times, May 9, 2004, *available at* 2004 WLNR 757991; Bill Gertz, *Pentagon Urges Repeal of Iraq Phone Contracts*, The Washington Times, June 22, 2004, *available at* 2004 WLNR 805699. Although complete copies of these news reports were not attached to Plaintiffs' Complaint, this Court may properly take judicial notice of newspaper articles. *See, e.g.*, Washington Post v. Robinson, 935 F.2d 282, 291 (D.C. Cir. 1991); Rwanda v. Rwanda Working Group, 227 F. Supp. 2d 45, 60 (D.D.C. 2002). The second of these news stories, which matches the text of paragraph 24(B) of plaintiff's Complaint, was apparently published on June 22, 2004, not June 6, 2004 as alleged in the Complaint. This difference is not material for purposes of this motion.

District of Columbia choice-of-law principles in turn treat the statute of limitations as a procedural issue, not a substantive one, thereby requiring application of the relevant District of Columbia statute of limitations to determine whether or not a particular state law claim is time-barred. *See, e.g.*, Material Supply Int'l, Inc. v. Sunmatch Indus. Co., Ltd., 146 F.3d 983, 991-92 (D.C. Cir. 1998) (applying District of Columbia statute of limitations to state law claims); A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp., 62 F.3d 1454, 1458 (D.C. Cir. 1995) (same); Jin, 254 F. Supp. 2d at 68 (same). Forum law also controls "the legal rules for determining whether the statute has run." Foretich v. Glamour, 753 F. Supp. 955, 960 (D.D.C. 1990). Thus, regardless of the substantive state law that might eventually apply to the plaintiff's common-law tort claims against Dr. Shaw, this Court must also evaluate those claims under District of Columbia statutes of limitations to determine whether the claims are timely. *See, e.g.*, Nix, 139 F. Supp. 2d at 132 & n.4 (holding that Ohio law would be applied to substance of plaintiff's tort claims, but applying District of Columbia statutes of limitations).

### B. D.C. Code § 12-301(4)'s One-Year Statute of Limitations Bars Plaintiff's Claims Against Dr. Shaw.

District of Columbia law bars plaintiff's tort claims against Dr. Shaw for a simple, incontrovertible reason: each of those claims falls outside the applicable one-year statute of limitations. Thus, independent of Dr. Shaw's absolute immunity from those claims under the Westfall Act, discussed below, those claims must also be dismissed under Federal Rule of Civil Procedure 12(b)(6), because they fail to state an actionable claim for which relief may be granted.

#### 1. Defamation.

The District of Columbia has established, by statute, several statutes of limitations governing common-law tort claims, including a one-year limitations period in D.C. Code § 12-301(4) for claims alleging libel, slander, and similar intentional torts. *See* Church of Scientology of California v. Foley, 640 F.2d 1335, 1338 (D.C. Cir. 1981) (defamation claims subject to one-

year statute of limitations under District of Columbia law); Grunseth v. Marriott Corp., 872 F. Supp. 1069, 1074 (D.D.C. 1995) (same); Mullin v. Washington Free Weekly, Inc., 785 A.2d 296, 298 (D.C. 2001) (same). "District of Columbia courts adhere strictly to the one-year limitation," dismissing claims brought mere days beyond the one-year statute. Jin, 254 F. Supp. 2d at 68 (noting that Mullin dismissed complaint brought one year and three days after publication).

      Careful examination of plaintiff's Complaint reveals only seven specific allegedly defamatory statements made by Dr. Shaw.[4] Paragraph 23 of the Complaint lists these statements, which range in date from April 12, 2004 (the earliest) to June 14, 2004 (the latest). Although plaintiff's April 10, 2006 Complaint concedes that he knew about each of these statements shortly after it was made, see Compl. ¶¶ 23(A)-(G), not one of these statements is remotely within the one-year statute of limitations provided by D.C. Code § 12-301(4).

      Moreover, assuming *arguendo* that Dr. Shaw could be held liable for subsequent news reports made "as a consequence" of the statements to reporters enumerated in paragraph 23, Compl. ¶ 24, those news reports fall outside of the statute of limitations as well. Paragraph 24 of the Complaint identifies three specific news reports allegedly prompted by Dr. Shaw's disclosures: a May 9, 2004 article in the *Washington Times*; a June 6, 2004 article in the *Washington Times*; and a March 29, 2005 article in *Newsmax*.[5] Just as with the alleged disclosures by Dr. Shaw to reporters set out in paragraph 23, each one of these articles was published outside of the one-year

---

  [4] The Complaint also contains a conclusory "information and belief" allegation that Dr. Shaw made other defamatory statements, but provides no further information on what those statements might be or when they were made. See Compl. ¶ 40. This catch-all "information and belief" allegation is discussed below.

  [5] It is unclear when plaintiff first learned of the news reports identified in paragraph 24 of the Complaint, but it is also irrelevant. Under District of Columbia law, the limitations period for claims of defamation in the mass media begins to run on the date of publication, not the date of discovery by the plaintiff. See Mullin, 785 A.2d at 299; Wallace v. Skadden, Arps, Slate, Meagher & Flom, 715 A.2d 873, 882 (D.C. 1998) ("[d]efamation occurs on publication, and the statute of limitations runs from the date of publication"); Foretich, 741 F. Supp. at 252 (same); Thomas v. News World Communications, 681 F. Supp. 55, 73 (D.D.C. 1988) (same).

statute of limitations period. None of them can sustain a claim for defamation against Dr. Shaw at this late date.

Finally, paragraph 40 of the Complaint alleges "[o]n information and belief, prior to and subsequent to DoD's termination of Shaw, Shaw knowingly published and republished the false representations of fact." This catch-all cannot salvage plaintiff's defamation claim. It contains no date of alleged wrongdoing at all, and certainly not one within the statute of limitations period. Indeed, reading paragraph 40 in conjunction with paragraph 39, it is clear that the paragraph merely alleges, in conclusory fashion, that Dr. Shaw committed wrongdoing "prior to . . . DoD's termination of Shaw" – that is, before "early December 2004" – and "subsequent to DoD's termination of Shaw" in early December 2004. Compl. ¶¶ 39-40. There thus is no basis to interpret paragraph 40 as an allegation that Dr. Shaw published false representations of fact *on or after April 10, 2005,* which plaintiff must do to avoid the time bar.

Moreover, even if paragraph 40 is read to allege wrongdoing after April 10, 2005 – and it does no such thing – the allegations of paragraph 40 are too vague and conclusory to support a claim that Dr. Shaw defamed plaintiff at all, let alone that he did so within the statute of limitations period. *See*, *e.g.*, Coates v. Law School Admission Council, No. 105-CV-0641(JDB), 2005 WL 3213960, at *2 (D.D.C. Oct. 25, 2005) (defamation claims must "specify the time, place, content, speaker and listener of the alleged defamatory material" (internal quotes omitted)); Wiggins v. District Cablevision, Inc., 853 F. Supp 484, 494 (D.D.C. 1994) (same); Black v. National Football League Players Association, 87 F. Supp. 2d 1, 6 (D.D.C. 2000) (same); Hoffman v. Hill & Knowlton, Inc., 777 F. Supp. 1003, 1005 (D.D.C. 1991) (noting that conclusory statements "are insufficient to state a claim"; "the time and place of the publication should be specifically stated in the complaint"); Leo Winter Assocs., Inc. v. Dep't of Health & Human Servs., 497 F. Supp. 429, 432 (D.D.C. 1980) (defamation claim may not be premised on

"generalities but devoid of specific defamatory comments"). Paragraph 40 simply does not allege actionable defamatory conduct; as such, it cannot bring plaintiff's defamation claim within the statute of limitations.

Plaintiff's failure to allege any wrongful conduct falling within the one-year statute of limitations is not merely fatal to his defamation claim; it dooms his false light invasion of privacy and infliction of emotional distress claims as well. Each of these claims is also governed by a one-year statute of limitations under D.C. law, and each is time-barred here.

      **2.**      **False Light Invasion of Privacy.**

This court and the U.S. Court of Appeals for the D.C. Circuit consistently apply the one-year statute of limitations contained in D.C. Code § 12-301(4) not only to defamation claims, but also to invasion of privacy claims, "on the rationale that invasion of privacy is essentially a type of defamation." Grunseth, 872 F. Supp. at 1074. *See also* Mittleman v. United States, 104 F.3d 410, 415 (D.C. Cir. 1997) (applying one-year statute to false light claim); Henderson v. MTV, No. 05-CV-1937(EGS), 2006 WL 1193872, at *1 (D.D.C. May 3, 2006) (applying one-year statute to claim for invasion of privacy); Jankovic v. International Crisis Group, 429 F. Supp. 2d 165, 171 (D.D.C. 2006) (same; false light claim "intertwined" with defamation); Nix, 139 F. Supp. 2d at 134 n.9 (one-year bar applied to invasion of privacy "in the District on the grounds that this type of claim is essentially a type of defamation"). As with plaintiff's defamation claim, and for the same reasons, plaintiff's false light invasion of privacy claim is untimely.

Plaintiff's Complaint makes it clear that the factual underpinnings of his "false light" invasion of privacy claim are exactly the same as those supporting his defamation claim. *See* Compl. ¶ 60 ("[t]he statements made by Defendant Shaw that Plaintiff Sudnick engaged in misconduct . . . place Plaintiff Sudnick in a false light"); Compl. ¶ 61 (alleging wrongdoing by Dr. Shaw "[i]n composing the False Light Statements and causing [them] to be published"). As

discussed above with respect to plaintiff's defamation claim, none of the "statements," "composing," or "publish[ing]" alleged in the Complaint occurred within one year of filing. This requires dismissal of plaintiff's invasion of privacy claim, just as it dooms his defamation claim.

### 3.     Intentional and Negligent Infliction of Emotional Distress.

Finally, plaintiff's claims for intentional and negligent infliction of emotional distress (Counts Six and Seven, respectively) are also subject to the one-year statute of limitations under D.C. Code § 12-301(4), and must be dismissed.

Just as with "false light" invasion of privacy claims, both the U.S. Court of Appeals for the D.C. Circuit and this Court routinely hold that tort claims for emotional distress are governed by D.C. Code § 12-301(4)'s one-year statute of limitations when the claimed emotional injury arises out of the publication of false or defamatory statements. *See* Mittleman, 104 F.3d at 416 ("emotional injury arising out of the publication of false statements, as from false light invasion of privacy, would be governed by the one-year statute of limitations"); Thomas, 681 F. Supp. at 73 (dismissing plaintiffs' claim for emotional distress which was "completely dependent upon and 'intertwined' with their claims" for libel and defamation); Foretich, 741 F. Supp. at 251 (one-year statute applies where emotional distress claim "arises out of" allegedly defamatory conduct); Doe v. Southeastern Univ., 732 F. Supp. 7, 8 (D.D.C. 1990) (one-year statute applies to emotional distress claim arising out of invasion of privacy); Parker v. Grand Hyatt Hotel, 124 F. Supp. 2d 79, 87 (D.D.C. 2000) (rule applying D.C. Code § 12-301(4)'s one-year statute to "intertwined" claims "applies to claims for negligent infliction of emotional distress as well"); *see also* Mullin, 785 A.2d at 298 n.3 (noting that "if the defamation claim is barred, the other claims intertwined with the defamation claim are also barred").

This one-year statute of limitations for emotional distress claims "intertwined" with defamation plainly should be applied here. Plaintiff's claims for intentional and negligent

infliction of emotional distress both stem from the identical core allegations underlying his defamation and false light invasion of privacy claims; namely, that Dr. Shaw sought to discredit plaintiff by disseminating false statements, including a "report of investigation" containing "false and inaccurate allegations that Plaintiff Sudnick had been offered and or had received bribes," to various specifically-identified media outlets. Compl. ¶¶ 13, 22, 23. Some of those media outlets then allegedly published news reports "each of which falsely reported that Plaintiff Sudnick received bribes," Compl. ¶ 24. The Complaint contains no other factual predicate for plaintiff's emotional distress claims, which are "completely dependent upon and 'intertwined' with," Thomas, 681 F. Supp. at 73, his claims of improper, defamatory disclosures by Dr. Shaw.

In such circumstances, this Court should apply D.C. Code § 12-301(4)'s one-year statute of limitations and dismiss plaintiff's emotional distress claims as time-barred, just as it did in Mittleman, a case remarkably similar to this one. In Mittleman, as here, the plaintiff raised intentional infliction of emotional distress and negligence claims "based on the creation, maintenance, and dissemination of . . . allegedly false I[nspector] G[eneral] reports." Mittleman v. United States, 997 F. Supp. 1, 7 (D.D.C. 1998), aff'd 1998 WL 796298 (D.C. Cir. Oct. 15, 1998). This Court dismissed the plaintiff's emotional distress claims on the ground that they were "clearly subject to D.C.'s one-year statute of limitations for libel and slander, and are therefore untimely," id. at 8. Mittleman and the other cases cited above require the same result – dismissal – in this case.[6]

---

[6] Although plaintiff's negligent infliction of emotional distress claim is untimely for the reasons set out above, and the Court thus need not reach the issue of whether the Complaint properly states such a claim, defendant notes that this claim is also defectively pleaded. As this Court recently noted, D.C. law distinguishes between the independent tort of negligent infliction of emotional distress and emotional distress as an element of tort damages. See Nnadili v. Chevron U.S.A., Inc., No. 02-CV-1620(ESH), 2006 WL 1516010, at *4-*6 (D.D.C. June 1, 2006). To sustain a stand-alone tort claim for negligent infliction of emotional distress, a plaintiff must allege direct physical injury or that he was within the "zone of danger" for such an injury. See id. at *6 & n.6; Hayes v. Chartered Health Plan, 360 F. Supp. 2d 84, 89 (D.D.C. 2004) (plaintiff must plead "either the emotional distress resulted from a direct physical injury, or the plaintiff was in the 'zone of physical danger' created by the defendant's negligence"). This

## II. COUNTS IV-VII MUST BE DISMISSED BECAUSE DR. SHAW IS ABSOLUTELY IMMUNE FROM LIABILITY FOR TORTS COMMITTED WITHIN THE SCOPE OF HIS EMPLOYMENT AS DEPUTY UNDERSECRETARY OF DEFENSE.

Even if plaintiff's tort claims against Dr. Shaw were not time barred (and, as set forth above, they plainly are), each claim against Dr. Shaw must be dismissed on a wholly separate, independent ground: each asserts a common law tort claim for which Dr. Shaw enjoys absolute immunity under the Westfall Act, 28 U.S.C. § 2679.  As detailed below, plaintiff's allegations arise from actions within the scope of Dr. Shaw's employment by the United States as a Deputy Undersecretary of Defense; Dr. Shaw, therefore, is absolutely immune from common law tort liability in connection with these alleged acts.  The caselaw makes clear that this blanket immunity exists irrespective of whether the alleged conduct was legal or illegal, or even intentionally tortious.  Plaintiff's only recourse is a claim against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80 ("FTCA"), not a common-law tort claim against Dr. Shaw.[7]  Because Counts Four through Seven fall outside of this exclusive remedy, the Court lacks subject matter jurisdiction over those claims vis-à-vis Dr. Shaw, and they may only continue (if at all) as FTCA claims against the United States.

### A. The Westfall Act Affords Federal Officials Absolute Immunity for Torts Committed Within the Scope of Their Employment.

The Westfall Act provides tort-claim immunity to federal officials "by making a Federal Tort Claims Act ("FTCA") action against the Government the exclusive remedy for torts

---

provides an independent reason to dismiss Count Seven, which purports to allege negligent infliction of emotional distress "actionable under the laws of the District of Columbia," Compl. ¶ 73, but contains no physical injury or "zone of danger" allegation.

[7]  The Westfall Act deprives courts of subject matter jurisdiction over tort claims against federal employees acting within the scope of employment.  At the same time, however, it provides for automatic conversion of those claims into FTCA claims against the United States.  *See* 28 U.S.C. § 2679(b)(1) ("preclud[ing]" damages claims against federal employees for conduct within the scope of employment; FTCA provides "exclusive" cause of action for such conduct); § 2679(d)(1) (upon certification by Attorney General that acts were within the scope of office or employment, case "shall be deemed an action against the United States under the provisions of this title"); § 2679(d)(3) (same, upon finding by Court that acts were within the scope of office or employment).

committed by Government employees in the scope of their employment." <u>Greene v. Nguyen</u>, No. 05-0407(RMU), 2005 WL 3275897, at *2 (D.D.C. September 7, 2005) (internal quotation omitted); *see also* <u>Haddon v. United States,</u> 68 F.3d 1420, 1422-23 (D.C. Cir. 1995) (Westfall Act shields federal employees "from state tort lawsuits for money damages" for acts committed within the scope of their employment). This immunity applies to *all* state law tort claims, including claims for intentional torts such as those alleged against Dr. Shaw. *See*, *e.g.*, <u>United States v. Smith</u>, 499 U.S. 160, 165-69 (1991) (federal employees are immune from all but <u>Bivens</u> and specific federally-excepted suits when acting within scope of employment).

Where, as here, a complaint asserts tort claims against a federal employee, the question whether the employee is immune "from state tort lawsuits for money damages hinges exclusively on whether [he or she was] acting within the scope of employment during the alleged incident." <u>Haddon</u>, 68 F.3d at 1422-23. Such a determination may occur in either of two ways. First, the Attorney General or his designee may issue a certification that the allegedly wrongful acts were within the scope of employment, *see* 28 U.S.C. § 2679(d)(1); such a certification constitutes "prima facie" proof that the defendant in fact acted within the scope of employment. <u>Kimbro v. Velten</u>, 30 F.3d 1501, 1509 (D.C. Cir. 1994). The burden then shifts to the plaintiff to prove by the preponderance of the evidence that the defendant acted outside the scope of employment. *See id.* In the alternative – in the event that the Attorney General does not certify that a federal employee was acting within the scope of employment – the employee may petition the Court to make such a finding directly. *See* 28 U.S.C. § 2679(d)(3). Whether given acts are within the scope of employment is ultimately a legal question. *See* <u>Hoston v. Silbert</u>, 681 F.2d 876, 879 (D.C. Cir. 1982).

The government has confirmed that it is considering whether to issue a certification pursuant to 28 U.S.C. § 2679(d)(1) in this case, noting, in the Department of Defense's Response

to Motion to Set Aside Entry of Default, that "the claims against Shaw arise from his federal employment . . . . Because of the nature of the claims against Shaw, the possibility exists that the United States will step into his shoes as a defendant under the Westfall Act." Response at 7, ¶ 3; s*ee also id.* at 2 ("According to the Complaint, at least some of the tortious acts giving rise to plaintiff's claims were connected to Shaw's work as a government employee"). In the event that the government makes such a certification, plaintiff's claims against Dr. Shaw will only survive if "he comes forward" with specific facts rebutting the certification. Stokes v. Cross, 327 F.3d 1210, 1214 (D.C. Cir. 2003).

Nevertheless, even if the Department of Justice does not issue a timely 28 U.S.C. § 2679(d)(1) certification in this case, District of Columbia law and the allegations of the Complaint provide ample reason for this Court to find under 28 U.S.C. § 2679(d)(3) that Dr. Shaw's actions were within the scope of employment, conclusively barring plaintiff's tort claims against him.

### B. The Broad Scope of Employment Under District of Columbia Law.

A district court is required to apply the law of the jurisdiction in which the alleged torts occurred when determining whether a federal employee was acting within the scope of his or her employment. *See* Council on American-Islamic Relations v. Ballenger, 444 F.3d 659, 663 (D.C. Cir. 2006) ("Under the Westfall Act, courts apply the *respondeat superior* law in the state in which the alleged tort occurred").[8] The District of Columbia follows the Restatement (Second) of

---

[8] Here, Plaintiff explicitly invokes the common law of the District of Columbia in asserting his claims, Compl. ¶ 73; accordingly, the Court may appropriately apply District of Columbia *respondeat superior* law. But even if Virginia law applied to this case, which involves a former Pentagon official (and there is no allegation in the Complaint that it does), the outcome would be the same, because under Virginia law, "scope of employment" is interpreted broadly, just as it is in the District of Columbia. *See, e.g.,* Doyle-Penne v. Muhammad, 299 F.3d 1142, No. 99-2101, 2000 WL 1086906, at *2 (4th Cir. 2000) ("Virginia courts construe scope of employment broadly, holding that even intentional torts may be within the scope of employment") (*citing* Plummer v. Center Psychiatrists, 476 S.E.2d 172, 174-75 (Va. 1996) and Commercial Business Systems, Inc. v. BellSouth Services, 453 S.E.2d 261, 266 (Va. 1995)).

Agency (1958) (the "Restatement") in defining the scope of employment. *See* Council on Am.-Islamic Relations, 444 F.3d at 663 (*citing* Moseley v. Second New St. Paul Baptist Church, 534 A.2d 346, 348 n.4 (D.C. 1987)). Under the Restatement, an employee's conduct is within the scope of employment if:

> (a) it is of the kind he is employed to perform;
>
> (b) it occurs substantially within the authorized time and space limits;
>
> (c) it is actuated, at least in part, by a purpose to serve the [employer], and
>
> (d) if force is intentionally used by the [employee] against another, the use of force is not unexpectable by the [employer].

Restatement § 228.

District of Columbia courts interpreting Section 228 of the Restatement have adopted an "expansive definition of conduct that falls within the scope of employment." Greene, 2005 WL 3275897 at *5; *see also id.* at *4 (*citing* Lyon v. Carey, 533 F.2d 649, 652 (D.C. Cir. 1976) (mattress deliveryman acted within scope of employment in assaulting and raping a customer following a delivery dispute)), and Johnson v. Weinberg, 434 A.2d 404, 409 (D.C. 1981) (laundromat employee acted within scope of employment when he shot customer during dispute over the customer's missing laundry); *see also* Council on Am.-Islamic Relations, 444 F.3d at 664 (noting that scope of an employee's "authorized duties" is "liberally construed" under D.C. law). Thus, "[o]nly when the conduct in question bears an extremely attenuated relation to the defendant's job duties have courts found that the conduct was not of the kind that the defendant was employed to perform." Greene, 2005 WL 3275897, at *4.

As the D.C. Circuit recently noted, to determine whether a federal employee's allegedly wrongful conduct was within the scope of his employment, "[t]he proper inquiry . . . 'focuses on the *underlying dispute or controversy,* not on the nature of the tort, and is broad

enough to embrace any intentional tort arising out of a dispute that was originally undertaken on the employer's behalf.'" Council on Am.-Islamic Relations, 444 F.3d at 663 (citing Weinberg v. Johnson, 518 A.2d 985, 992 (D.C. 1996)) (emphasis added). The focus is on a liberal construction of the employee's job, and as long as the alleged wrongful conduct's relationship with that job is not "extremely attenuated," District of Columbia courts routinely hold that intentionally tortious and even criminal conduct is nevertheless within the scope of employment. See Lyon, 533 F.2d at 652; Johnson, 434 A.2d at 409.[9]

### C. All of the Allegedly Tortious Conduct Occurred Within the Scope of Dr. Shaw's Employment As a Deputy Undersecretary of Defense.

Plaintiff acknowledges that Dr. Shaw served as a Deputy Undersecretary of Defense in the United States Department of Defense through early December 2004, Compl. ¶ 39, and also alleges that he also exercised Inspector General functions at all times relevant to the allegations of the Complaint under an "appointment made by the then-DoD Inspector General," Compl. ¶ 15. Applying the "underlying dispute or controversy" immunity test for federal employees, Council on Am.-Islamic Relations, 444 F.3d at 663, Dr. Shaw cannot be sued for torts arising from an "underlying dispute or controversy" falling within the scope of his employment as a Deputy Undersecretary of Defense exercising Inspector General functions.

To be sure, the Complaint is not a model of the "short and plain statement" contemplated by Federal Rule of Civil Procedure 8(a). Distilled to its essence, however, each of

---

[9] See generally Restatement § 231 ("an act may be within the scope of employment although consciously criminal or tortious"); see, e.g., Davric Maine Corp. v. United States Postal Service, 238 F.3d 58, 66 (1st Cir. 2001) ("Under the Restatement (Second), an action may be within the scope of employment although 'forbidden, or done in a forbidden manner' . . . or even 'consciously criminal or tortious'") (citing Restatement §§ 230-31 (internal citations omitted)); United States v. Domestic Industries, 32 F. Supp. 2d 855, 861 (E.D. Va. 1999) (noting that even "expressly forbidden or even conscious criminal acts may be within the scope of employment" for purposes of Westfall Act immunity); see also Villeza v. United States, No. 05-0043, 2006 WL 278618, at *3 n.2 (D. Hawaii Jan. 5, 2006) (noting that, under the Restatement, "an act may be within the scope of employment although consciously criminal or tortious") (quoting Restatement § 231).

tort causes of action in the Complaint arises out of the same nucleus of allegations: that Dr. Shaw prepared and disseminated an official Department of Defense "report of investigation" containing allegedly false statements critical of plaintiff, Compl. ¶ 21, and that Dr. Shaw allegedly leaked portions of the report to the press, "stat[ing] that he was a Deputy Undersecretary of Defense and a DoD Deputy Inspector General." Compl. ¶ 22. *See also* Compl. ¶ ¶ 21-27 (variously describing the report as "an official DoD report", an "official 20+ page DoD Inspector General report," and a "DoD IG report").

The dispositive question, therefore, is whether preparation of an official Department of Defense "report of investigation" and talking to the press were within the scope of Dr. Shaw's duties as a Deputy Undersecretary of Defense who, according to plaintiff's own Complaint, "at all times relevant to the allegations of this Complaint also was a DoD Deputy Inspector General pursuant to an appointment made by the then-DoD Inspector General," Compl. ¶ 15. If so, he is absolutely immune from tort liability in connection with those acts. *See generally* Council on Am.-Islamic Relations, 444 F.3d at 664 ("The appropriate question, then, is whether that *telephone conversation* – not the allegedly defamatory sentence – was the kind of conduct [defendant Congressman] was employed to perform") (emphasis added).

Nothing in the Complaint suggests that Dr. Shaw lacked the authority to investigate waste, fraud, and abuse by Department of Defense appointees in Iraqi contracting and to prepare a report about it.[10] To the contrary, the gravamen of the Complaint is that Dr. Shaw *had* such authority, but that he abused it by preparing and disseminating an official Department of Defense report that wrongfully concluded that Plaintiff had accepted bribes. Indeed, the Complaint is replete with references to Dr. Shaw's allegedly wrongful conduct having occurred pursuant to his

---

[10] *See, e.g.*, Inspector General Act, 5 U.S.C. Appx. § 8(c)(2) (Department of Defense Inspector General empowered to initiate, conduct, and supervise audits and investigations in the Department); 5 U.S.C. § 8(c)(4) (Department of Defense Inspector General empowered to investigate waste, fraud, and abuse).

official Pentagon activities. *See, e.g.*, Compl. ¶ 12 ("By using his official DoD position . . ."); Compl. ¶ 13 ("[f]rom his official office within the Office of the Secretary of Defense, using his concurrent official position as a Deputy DoD Inspector General," Dr. Shaw allegedly commenced his "illegal scheme"); Compl. ¶ 16 (quoting email sent to plaintiff by Dr. Shaw "from his official Pentagon office"); Compl. ¶ 41 ("The DoD, through the actions of then-Deputy Undersecretary of Defense John Shaw, disseminated information protected by the Privacy Act concerning [plaintiff] . . . .").[11]

Plaintiff likewise has not established – and cannot establish – that speaking to the media was outside the scope of Dr. Shaw's duties as a Deputy Undersecretary of Defense. Indeed, any such contention would defy credulity and would run headlong into a wide body of law holding that government officials' conversations with the press are witin the scope of their employment. *See, e.g.*, Council on Am.-Islamic Relations, 444 F.3d at 664 (holding that speaking to the press "falls within the scope of a congressman's authorized duties" and claims arising from such acts are thus barred by Westfall Act) (internal quotation omitted); Trifax Corp. v. District of Columbia, 53 F. Supp. 2d 20, 29 (D.D.C. 1999), *aff'd*, 314 F.3d 641 (D.C. Cir. 2003) (plaintiff's defamation claim, which included allegation that officials in D.C.'s Office of Inspector General "released a copy of [an] OIG Report to the *Washington Post*," dismissed on absolute immunity grounds); Aversa v. United States, 99 F.3d 1200, 1210-11 (1st Cir. 1996) (Assistant U.S. Attorney's statements to press in violation of Department of Justice regulations and District Court's local rules held to be within the scope of employment).[12] Moreover, Plaintiff himself acknowledges that, in speaking to media on the occasions alleged in the Complaint, Dr. Shaw was specifically acting in

---

[11]   These allegations place Dr. Shaw's alleged misconduct "substantially within the authorized time and space limits," Restatement § 228, of his employment with the Department of Defense. To the extent that plaintiff attempts to avoid this result with paragraph 40's allegation that "[o]n information and belief, . . . subsequent to DoD's termination of Shaw, Shaw knowingly published and republished the false representations of fact," that allegation is conclusory and entitled to no weight in the scope-of-employment inquiry.

his capacity as a Pentagon official, *see* Compl. ¶ 22 ("In making the [allegedly illegal disclosures to the media], Shaw stated that he was a Deputy Undersecretary of Defense and a DoD Deputy Inspector General"). Just as important, plaintiff points to no factual instance – merely "information and belief" – suggesting that Dr. Shaw made defamatory statements to the media after he left the employ of the Department of Defense. *See* Compl. ¶ 40.

In sum, there is no allegation whatsoever in the Complaint – much less any evidence – that investigation of suspected bid-rigging and talking to members of the media was conduct so "extremely attenuated relati[ve] to [Dr. Shaw's] job duties" as to allow a finding "that the conduct was not of the kind that the defendant was employed to perform." Greene, 2005 WL 3275897 at *4. Dr. Shaw thus enjoys absolute immunity from tort claims arising from such activity, even if he violated applicable law when exercising that authority.

This Court has had occasion to consider a case on all fours with this one; that earlier case concerned the District of Columbia Inspector General (an analogue of Inspectors General under the federal system) and other officials involved in the dissemination of an Inspector General report. In Trifax Corp. v. District of Columbia, 53 F. Supp. 2d 20 (D.D.C. 1999), *aff'd*, 314 F.3d 641 (D.C. Cir. 2003), just as in this case, the plaintiff alleged that defendants published a false and defamatory Inspector General report, eventually releasing a copy of the report to the press, which resulted in a subsequent, highly critical article in the *Washington Post*. *Id.* at 23. This Court dismissed the plaintiff's defamation claim on absolute immunity grounds[13], finding that the defendant officials, which included the mayor of the District of Columbia, the Inspector

---

[12]   *See also* Williams v. United States, 71 F.3d 502, 507 (5th Cir. 1995) (Congressman's allegedly defamatory statements during media interview were within scope of his employment and claims arising from interview were therefore barred by Westfall Act); Chapman v. Rahall, 399 F. Supp. 2d 711, 714-15 (W.D. Va. 2005) (same).

[13]   District of Columbia officials are not protected by the Westfall Act; the Trifax court instead dismissed the plaintiff's claim under Barr v. Matteo, 360 U.S. 564 (1959), which set out an absolute immunity defense for claims of defamation against governmental employees. *See* Trifax, 53 F. Supp. at 28-29.

General, and several subordinate officials, acted "within the outer perimeter of their office" and thus were immune from liability. *Id.* at 29. Dr. Shaw respectfully suggests that the Court should hold the same here.

## CONCLUSION

For the foregoing reasons, defendant John A. Shaw respectfully requests that the Court dismiss Counts Four through Seven of the Complaint, and that Dr. Shaw be dismissed as a party defendant to this action.

>
> Respectfully submitted,
>
> AEGIS LAW GROUP LLP
>
>
> By:  _____/s/ Paul Rauser_____
> Paul C. Rauser (D.C. Bar No. 461722)
> 901 F Street, N.W., Suite 500
> Washington, D.C. 20004
> T: 202-737-3500
> F: 202-737-3330

July 31, 2006                                            *Attorneys for Defendant John A. Shaw*