UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DANIEL SUDNICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 06-00654 (ESH) |
| DEPARTMENT OF DEFENSE and | ) | |
| JOHN A. SHAW, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT JOHN A. SHAW'S MOTION TO DISMISS THE AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Defendant John

A. Shaw, by and through undersigned counsel, respectfully moves the Court to dismiss all counts

of the Amended Complaint asserted against Dr. Shaw in his individual capacity, *i.e.,* Counts Four

(Violation of Fifth Amendment Due Process Rights), Five (Conspiracy to Deprive of Equal

Protection of Law), Six (Defamation) and Seven (False Light Invasion of Privacy).

A Memorandum in Support and Proposed Order are attached.

Respectfully submitted,

AEGIS LAW GROUP LLP

By:      /s/ Paul Rauser
Paul C. Rauser (D.C. Bar No. 461722)
901 F Street, N.W., Suite 500
Washington, D.C. 20004
T: 202-737-3500
F: 202-737-3330

November 13, 2006                    *Attorneys for Defendant John A. Shaw*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DANIEL SUDNICK,                         )
                                        )
    Plaintiff,                          )
                                        )
                                        )
                                        )
            v.                       )        Civil Action No.
                                        )        06-00654 (ESH)
DEPARTMENT OF DEFENSE and               )
JOHN A. SHAW,                           )
                                        )
    Defendants.                         )
_____ )

**MEMORANDUM IN SUPPORT OF DEFENDANT
JOHN A. SHAW'S MOTION TO DISMISS THE AMENDED COMPLAINT**

      Defendant John A. Shaw, by and through undersigned counsel, respectfully moves

the Court to dismiss Counts Four through Seven of the Amended Complaint under Federal Rules

of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject-matter jurisdiction and for failure to

state claims upon which relief can be granted.

**INTRODUCTION**

      Having conceded that his original complaint against former Deputy Undersecretary

of Defense John A. Shaw raised defective state law defamation claims, subject in their entirety to

the Federal Tort Claims Act (for which the United States was substituted for Dr. Shaw as a

defendant and the claims dismissed), plaintiff Daniel Sudnick now seeks to repackage these

*identical* allegations under the rubric of constitutional torts. The question presented to the Court is

whether a lawsuit alleging defamation claims from which a former Government official is

absolutely immune can survive merely by re-styling those same claims as a <u>Bivens</u> action or a

claim for violation of 42 U.S.C. § 1985(3). For the reasons explained below, it may not. Even if

the Court decides it has jurisdiction to consider such claims, all Counts of the complaint against

Dr. Shaw in his individual capacity fail to state claims upon which relief can be granted or are otherwise barred under the Westfall Act.

## FACTUAL AND PROCEDURAL BACKGROUND

The present action concerns claims by Daniel Sudnick, a former Senior Adviser to the Iraqi Ministry of Communications under the Coalition Provisional Authority, against the United States Department of Defense ("DoD") and Dr. Shaw in his individual capacity. *See* Amended Complaint ("Am. Compl.") ¶ 6. Plaintiff's Amended Complaint arises out of an alleged scheme by Dr. Shaw "[f]rom his official office within the Office of the Secretary of Defense (OSD) using his concurrent position as a Deputy DoD Inspector General," Am. Compl. ¶ 13, to make "illegal disclosures to various media reporters and outlets" of an official Department of Defense Inspector General Report and related statements. *See* Am. Compl. ¶¶ 21, 23.[1] Plaintiff contends that these materials, which he variously characterizes as a "report of investigation" and as "DoD Inspector General/OSD raw or incomplete preliminary investigative information and other investigative materials," and others characterize as "an official DoD report," a "DoD Inspector General Report," and a "DoD IG report," Am. Compl. ¶¶ 13, 21, 23, contained false and inaccurate allegations that plaintiff had been offered or had received bribes during his tenure as the CPA's Senior Adviser to the Ministry of Communications. *See* Am. Compl. ¶ 21.

Plaintiff's original Complaint (and now, the Amended Complaint) alleges that Dr. Shaw made specific disclosures of this information on seven specific dates in April, May, and June 2004, during the period of his employment by the Department of Defense. *See* Am. Compl. ¶ 23. As a consequence, Mr. Sudnick alleged that three news stories – on May 9, 2004, June 6, 2004,

---

[1]    Plaintiff's nearly-identical Amended Complaint contains the same numbering error present in the original Complaint—there are still two paragraphs numbered 23. Unless otherwise noted, discussion of paragraph 23 in this Memorandum refers to the first (and longer) of the two paragraphs.

and March 29, 2005 – falsely reported that plaintiff received bribes in connection with his Iraqi telecommunications work.  Am. Compl. ¶ 24.

Dr. Shaw moved to dismiss the original Complaint, noting that the District of Columbia's one-year statute of limitations barred Mr. Sudnick's defamation-related claims (defamation, false light invasion of privacy, and intentional and negligent infliction of emotional distress), and furthermore, that Dr. Shaw was absolutely immune from liability for torts allegedly committed within the scope of his employment as Deputy Undersecretary of Defense.  *See* Mem. in Support of Def. John A. Shaw's Mot. to Dismiss (Dkt. # 22).  Acknowledging that 28 U.S.C. § 2679(b)(1) provided Dr. Shaw with absolute immunity for the acts alleged in the Complaint, the Government certified Dr. Shaw had acted within the scope of his employment, moved to substitute the United States as party-defendant for Mr. Shaw, and sought dismissal of the tort claims for lack of subject-matter jurisdiction.  *See* Motion of the United States to Substitute and to Dismiss (Dkt. # 27).  Mr. Sudnick, too, conceded he had failed to exhaust his administrative remedies under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80 ("FTCA"), and consented to the dismissal of the counts against Dr. Shaw for lack of subject-matter jurisdiction.  *See* Plaintiff's Mem. of Non-Opposition to Substitution (Dkt. # 29).

As part of the dismissal of the original counts against Dr. Shaw, Mr. Sudnick also requested that he be permitted to amend his complaint, seeking to recast his deficient defamation claims as a "purposeful Bivens deprivation of Plaintiff Sudnick's Constitutionally-protected Liberty interest in his good name and employability without due process of law," as well as to include a claim for declaratory and injunctive relief against Dr. Shaw under 42 U.S.C. § 1985(3). Plaintiff Daniel Sudnick's Mem. of Points and Authorities in Opposition to Def. Shaw's Mot. to Dismiss ("Pl. Mem.") (Dkt. # 26) at 3.

Surprisingly, though, the Amended Complaint factually is a carbon copy of the original Complaint, save for one new alleged fact relating to a purported June 15, 2006 conversation between Dr. Shaw and a newspaper reporter containing statements that were never printed. *See* Am. Compl. ¶ 40A. This lone assertion forms the basis of Counts VI (defamation) and VII (false light invasion of privacy), jurisdiction for which is premised solely on a request that the Court invoke its supplemental jurisdiction under 28 U.S.C. § 1367. The remaining claims against Dr. Shaw, Counts IV (styled "Violation of Fifth Amendment Due Process Rights") and Five (styled "42 U.S.C. 1985(3) Conspiracy to Deprive of Equal Protection of Law so as to Cause Injury to Person") derive entirely from Mr. Sudnick's original factual allegations concerning Dr. Shaw's official acts while Deputy Undersecretary of Defense.

## ARGUMENT

No amount of creative pleading can save Mr. Sudnick's recycled complaint, which attempts to maneuver around the jurisdictional bar of the FTCA and otherwise fails to state a claim upon which relief can be granted. Plaintiff cannot expand the Court's limited subject-matter jurisdiction by taking claims he acknowledges he must bring under the FTCA, if at all, and recharacterizing those identical allegations as constitutional torts, statutory violations, or state-law defamation claims touching the same subject matter; if the claims are state law defamation claims, as they are conceded to be, then the FTCA provides the *exclusive* remedy for their redress. Any other avenue of relief eviscerates the purposely-crafted statutory boundaries on such claims and undercuts the important rationale underlying Congress's grant of absolute immunity to government officials performing acts within the scope of their duties. As it concluded in disposing of Mr. Sudnick's original Complaint, the Court should find it lacks subject matter jurisdiction over all of the counts of the Amended Complaint asserted against Dr. Shaw, both the recast claims of his original Complaint and the new common-law defamation claims.

- 4 -

Even if the Court proceeds to consider the allegations of the Amended Complaint as alleged constitutional torts or statutory violations, additional reasons compel the dismissal of Counts IV and V for failure to state a claim upon which relief can be granted. *First*, the law does not recognize a cause of action pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), if that cause of action: (a) sounds in defamation or (b) is asserted when a complainant's statutory avenues of relief remain intact—as do Mr. Sudnick's causes of action against the United States under the Privacy Act, 5 U.S.C. § 552a. *Second*, plaintiff's Section 1985 action similarly does not lie because it sounds in defamation; moreover, it does not (and could not) allege the essential element of the claim—a race- or class-based conspiracy. *Third*, attempting to recast stale defamation allegations as a <u>Bivens</u> action or a Section 1985 claim cannot avoid their deficiency under the applicable one-year statute of limitations—a fatal defect that pervades both plaintiff's original and amended complaint.

I.    **THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER ALL CLAIMS ASSERTED AGAINST DR. SHAW INDIVIDUALLY, WHICH PLAINTIFF HAS ACKNOWLEDGED ARE DEFAMATION CLAIMS SUBJECT TO THE FTCA.**

It is axiomatic that federal courts are courts of limited jurisdiction, and "[t]he limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." <u>Owen Equip. & Erec. Co. v. Kroger</u>, 437 U.S. 365, 374 (1978). As prior briefing in this case has discussed, the Westfall Act operates to limit the subject matter jurisdiction of the federal courts, depriving them of subject matter jurisdiction over tort claims against federal employees acting within the scope of their employment. *See* 28 U.S.C. § 2679(b)(1). It is precisely that limitation upon the Court's jurisdiction that Mr. Sudnick here seeks to evade. Having found (at plaintiff's own urging) that his defamation claims were subject to the exclusive remedy of the FTCA, the Court is without jurisdiction to hear those identical claims or ones relating to the same subject matter, regardless of how Mr. Sudnick seeks to rename them.

### A.    The Scope of Westfall Act Immunity.

The Westfall Act by its express terms bars Mr. Sudnick's attempted end-run around the Court's jurisdictional limits.  Formally known as the Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub. L. No. 100-694, 102 Stat. 4563 (1988) (codified in part at 28 U.S.C. §§ 2671, 2674, 2679), the Act broadly immunizes federal officials acting within the scope of their employment for "negligent or wrongful act[s] or omission[s]."  *See* 28 U.S.C. § 2679(b)(1); United States v. Smith, 499 U.S. 160, 163 (1991) ("The Act confers such immunity by making an FTCA action against the Government the exclusive remedy for torts committed by Government employees in the scope of their employment."); Haddon v. United States, 68 F.3d 1420, 1422-23 (D.C. Cir. 1995) (Westfall Act shields federal employees "from state tort lawsuits for money damages" for acts committed within the scope of their employment); Greene v. Nguyen, No. 05-0407(RMU), 2005 WL 3275897, at *2 (D.D.C. September 7, 2005) (same).

Certification by the Attorney General's designee, as has occurred here, establishes that the government employee was acting in the scope of his or her employment.  *See* Kimbro v. Velten, 30 F.3d 1501, 1509 (D.C. Cir. 1994) (certification constitutes "prima facie" proof that the defendant in fact acted within the scope of employment).[2]  The import of this determination to this case cannot be overstated, for it provides Mr. Sudnick with an *exclusive* avenue of relief—the Federal Tort Claims Act.  "If the federal court determines that the employee acted within the scope

---

[2]    The Government's certification is subject to judicial review, of course, but not in the manner Mr. Sudnick envisioned before he conceded the applicability of the FTCA.  Once certification is made, the burden shifts to the plaintiff to prove by the preponderance of the evidence that the defendant acted outside the scope of employment.  *See* Kimbro, 30 F.3d at 1509. It is not, as Mr. Sudnick asserts, a decision which entitles him to demand "sufficient factual evidence that establishes to the satisfaction of Plaintiff (under summary judgment standards)" that the Government's certification is valid.  *See* Pl. Mem. at 2.  It is the other way around.  By virtue of its certification, the Government has agreed with Dr. Shaw that the factual allegations of the Complaint and Amended Complaint do not set forth facts sufficient to show that Dr. Shaw acted outside the scope of his employment.  Mr. Sudnick's failure to allege more ends the inquiry.  *See* Stokes v. Cross, 327 F.3d 1210, 1216 (D.C. Cir. 2003) ("Not every complaint will warrant further inquiry into the scope-of-employment issue.").

of official duties, the employee becomes absolutely immune from actions for money damages *arising from the same incident*; plaintiff's *only* recourse is to proceed against the federal government under the Federal Tort Claims Act." Haddon, 68 F.3d at 1420 (emphasis added) (citing 28 U.S.C. § 2679(b)(1), Martinez v. Lamagno, 515 U.S. 417 (1995)). Indeed, the text of the Westfall Act itself establishes the breadth of this immunity, which extends to all claims touching on the subject matter:

> The remedy against the United States . . . is exclusive of any other civil action *by reason of the same subject matter* against the employee. Any other civil action or proceeding for money damages *arising out of or relating to the same subject matter* against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

28 U.S.C. §2679(b)(1) (emphasis added). This broad grant of statutory immunity is designed to shield federal officials from the prospect of endless litigation over official actions of a government employee that relate to his or her tenure in office. *See* Westfall v. Erwin, 484 U.S. 292, 295 (1988) (noting official immunity doctrine is intended "to insulate the decisionmaking process from the harassment of prospective litigation," and citing the more efficient functioning of government "if officials are freed of the costs of vexatious and often frivolous damages suits").

**B.    The Westfall Act Bars Counts IV and V of the Amended Complaint.**

Counts IV and V of plaintiff's Amended Complaint, which depend on factual assertions identical to those of his original defamation complaint, are barred under the Westfall Act. Mr. Sudnick already has his exclusive remedy for his grievance—he is free to pursue his existing FTCA claims against the United States administratively, and then in court if necessary.

Of course, section 2679(b)(2) of the Westfall Act provides two exceptions to the broad statutory immunity of section 2679(b)(1) discussed above. The first exception concerns actions against employees of the Government "brought for a violation of the Constitution of the United States," *i.e.*, Bivens actions. 28 U.S.C. § 2679(b)(2)(A). The second concerns an action

"which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized." 28 U.S.C. § 2679(b)(2)(B). By styling Counts IV and V of the Amended Complaint as a Bivens action and a Section 1985 claim, plaintiff obviously attempts to invoke these exceptions and remedy his previous, deficient pleadings. But these exceptions cannot save his Amended Complaint where the essential nature of his causes of action—defamation—already is established.

As an initial matter, even if Mr. Sudnick styles his claims as a Bivens action or a Section 1985 claim, the Court must look beyond the caption of the Counts to ascertain their true nature. The Court's jurisdiction is established by allegations of operative facts bringing the controversy within the scope of a statute conferring jurisdiction on the court—not the mere recitation of a statute. See Sikora v. Brenner, 379 F.2d 134, 136 (D.C. Cir. 1967). Nor is the caption of Mr. Sudnick's counts a material element of the pleading for purposes of determining jurisdiction. See id. at 136-37.

Here, the operative facts that Mr. Sudnick asserts in the Amended Complaint are the very same facts he asserted in the original Complaint. The original Complaint, as agreed to by Mr. Sudnick, was dismissed without prejudice so that he could proceed with this claim administratively. Thus, the Amended Complaint on its face is nothing more than another civil action "by reason of the same subject matter" as his original Complaint, which is subject to Westfall Act immunity. 28 U.S.C. § 2679(b)(1). It is equally subject to the "strict" rule that "once a court determines that it lacks subject matter jurisdiction, it can proceed no further." Simpkins, 108 F.3d at 371 (citations omitted).[3]

---

[3]    As demonstrated below, *infra* Part II, the Bivens and Section 1985 counts strain mightily to attain even conceptual validity—their weakness further suggests an effort to evade limitations on the Court's jurisdiction.

Any other result would permit a Westfall Act-barred claim to coexist with a claim on *the very same facts* under one of its statutory exceptions, a logical impossibility under the statute: either the claims by reason of the subject matter in this case are barred or they are not—not both. Dr. Shaw is unaware of any case in which such simultaneous actions have been permitted to proceed. Indeed, Westfall Act statutory immunity would mean nothing if Mr. Sudnick were entitled to have an FTCA claim proceed administratively while simultaneously litigating the same causes of action under a different name in federal court. Allowing such parallel processes would also circumvent the subject-matter jurisdiction bar against hearing FTCA claims before they had completed the administrative process. Accordingly, the Court lacks subject-matter jurisdiction to hear Counts IV and V of the Amended Complaint.

### C.    The Westfall Act Bars Counts VI and VII of the Amended Complaint.

Likewise, Counts VI and VII of the Amended Complaint, defamation claims relating to an alleged conversation between Dr. Shaw and a reporter for the *Legal Times*, are barred under the Westfall Act. As discussed previously, once it is established that a government official has acted within the scope of employment, the Act bars all causes of action related to the subject matter, regardless of when the time of the alleged wrong occurred. *See* 28 U.S.C. § 2679(b)(1).

Mr. Sudnick's original Complaint attempted to circumvent a statute of limitations bar on his defamation claims by inserting a vague allegation of recent conduct:

> On information and belief, prior to and subsequent to DoD's termination of Shaw, Shaw knowingly published and republished the false representations of fact, in other than his officials [*sic*] capacity, that Plaintiff Daniel Sudnick had engaged in unethical and illegal conduct, including factual representations that Plaintiff Sudnick either asked for and/or received bribes.

Compl. ¶ 40.

As Dr. Shaw argued in his original motion to dismiss, this allegation was too vague to evade a limitations bar, as it contained no date of alleged wrongdoing; moreover, it was too

vague and conclusory to support a claim that Dr. Shaw defamed plaintiff at all, let alone that he did

so within the statute of limitations period.  *See, e.g.*, <u>Coates v. Law School Admission Council</u>, No.

105-CV-0641(JDB), 2005 WL 3213960, at *2 (D.D.C. Oct. 25, 2005) (defamation claims must

"specify the time, place, content, speaker and listener of the alleged defamatory material" (internal

quotes omitted)).  Perhaps attempting to remedy this deficiency, Plaintiff's Amended Complaint

repeats its original Paragraph 40, but adds a new Paragraph 40A:

> Such publication includes, but is not limited to, Defendant Shaw
> falsely and maliciously represent[ed] to a *Washington Legal Times*
> reporter, on or about 15 June 2006, that Plaintiff Daniel Sudnick
> was under active criminal investigation by U.S. Government
> criminal investigative authorities for the allegations made by Shaw
> against Plaintiff Sudnick, when in fact such representation was not
> true and either was known or should have been known to Defendant
> Shaw not to be true.

Am. Compl. ¶ 40A.

By their terms the two Counts of the Amended Complaint dependent on this

allegation, Counts VI and VII, are barred by Dr. Shaw's Westfall Act immunity.  Mr. Sudnick's

FTCA remedy for the entire subject matter of his complaint—the alleged campaign by Dr. Shaw to

discredit Mr. Sudnick—is "exclusive of any other civil action *by reason of the same subject matter*

against the employee."  28 U.S.C. § 2679(b)(1) (emphasis added).  Mr. Sudnick's allegations of

recent or post-employment conduct related to Dr. Shaw's prior official acts do not change this

result, for "[a]ny other civil action or proceeding for money damages *arising out of or relating to*

*the same subject matter* against the employee or the employee's estate is precluded *without regard*

*to when the act or omission occurred.*"  <u>Id.</u> (emphasis added).  The statute's reference to "without

regard to when the act or omission occurred" is designed to prevent precisely the claims that

plaintiff asserts here.  These words exist to save officials from living in fear that post-government

service discussions of past official activity will form the basis of a new generation of lawsuits

against them.  Plaintiff's complaint explicitly alleges that Dr. Shaw's comments to the reporter

were part of the alleged campaign of 2004 and 2005 publications forming the basis of Mr.

Sudnick's original complaint—they plainly "aris[e] out of" or "relate" to the same subject matter

of Plaintiff's FTCA action.  Accordingly, these new defamation claims brought against Dr. Shaw

in his individual capacity must go the way of his original claims—they must be brought, if at all,

under the terms of the FTCA and its prerequisite administrative review.  The Court, therefore,

lacks subject-matter jurisdiction to hear Counts VI and VII.

## II.    COUNTS IV AND V OF THE AMENDED COMPLAINT FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

Even if the Court determines it has subject-matter jurisdiction to consider Counts

IV and V of the Amended Complaint, plaintiff cannot establish he is entitled to constitutional or

statutory relief at all.

### A.    Count IV Fails to State a Claim for <u>Bivens</u> Relief.

There are three reasons why the Court should reject Mr. Sudnick's characterization

of his defamation claim as a <u>Bivens</u> action: 1) <u>Bivens</u> actions are precluded for defamation claims;

2) Mr. Sudnick does not allege facts sufficient to permit any other <u>Bivens</u> claim to proceed; and 3)

courts do not recognize <u>Bivens</u> actions where a comprehensive statutory remedy is available to a

plaintiff—in this case, the Privacy Act, 5 U.S.C. § 552a.

#### 1.    <u>Bivens</u> Relief Does Not Exist for Defamation Claims.

Dismissing Count IV is required by the well-established principle that a <u>Bivens</u>

action does not lie for claims of libel and slander.  "Defamation, by itself, is a tort actionable under

the laws of most States, but not a constitutional deprivation." <u>Siegert v. Gilley</u>, 500 U.S. 226, 233

(1991).

The D.C. Circuit similarly disposed of a complaint alleging both <u>Bivens</u> and

common law reputational injury claims in <u>Simpkins v. District of Columbia Gov't</u>, 108 F.3d 366

(D.C. Cir. 1997).  There, a government-employed physician sued for defamation, constructive

discharge, and related damages against the Secretary of Health and Human Services for disclosure of his conduct in the form of an adverse action report to the National Practitioners Data Bank.  The plaintiff, as here, attempted to argue his common law claims constituted both defamation and Bivens claims.  Even construing the plaintiff's libel and slander allegations as a Bivens action, the court dismissed: "The Supreme Court has held that a claim of defamation of the sort alleged here 'is a tort actionable under the laws of most States, but not a constitutional deprivation; and therefore 'is not recoverable in a Bivens action.'"  Simpkins, 108 F.3d at 371 (quoting Siegert, 500 U.S. at 233-34); see also Davric Maine Corp. v. United States Postal Serv., 238 F.3d 58, 68-69 (1st Cir. 2001) ("[S]o long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a Bivens action. To hold otherwise would effectively elevate state common law torts to constitutional status." (quotation and citations omitted)).

Mr. Sudnick's injury-to-reputation claims are no more Bivens claims than those in Siegert v. Gilley were.  Dr. Siegert claimed that he could not be hired after Dr. Gilley wrote a letter to a potential employer of Dr. Siegert stating he was inept and unethical.  See 500 U.S. at 228.  Dr. Siegert claimed this poor reference "rendered him unable to obtain other appropriate employment in the field," and constituted "an infringement of his 'liberty interests' in violation of the protections afforded by the Due Process Clause of the Fifth Amendment."  Id.  The Supreme Court concluded that these allegations failed to demonstrate a claim for denial of a constitutional right. See id. at 233-34.  Just as in Siegert, Mr. Sudnick alleges that a government official made public disclosures against a former government employee that deprived him of future opportunity for employment.  See Am. Compl. ¶ 54.  Just as in Siegert, Dr. Shaw's alleged public stigmatization of Mr. Sudnick, Am. Compl. ¶ 55, occurred after Mr. Sudnick had resigned from government employment.  Put another way, "[t]he alleged defamation was not uttered incident to the

termination" of Mr. Sudnick's employment; plaintiff's claim is thus a run-of-the-mill defamation claim. Siegert, 500 U.S. at 234.[4]

### 2.    Plaintiff Does Not Allege a Viable "Reputation-Plus" Claim.

Aware of the unavailability of Bivens relief for his claims, Mr. Sudnick may now be attempting to invoke the infrequently-recognized "reputation-plus" or "stigma or disability" Bivens claim. His conclusory allegations of harm, however, do not state such claims. In Trifax Corp. v. District of Columbia, this Circuit recognized that conclusory allegations of deprivation of one's chosen employment cannot overcome the Supreme Court's instruction in Siegert v. Gilley that reputational injuries alone do not infringe constitutionally-protected interests. See 314 F.3d 641, 643-44 (D.C. Cir. 2003). In Trifax, a government contracting company alleged that the release of an allegedly defamatory audit report deprived it of the liberty to engage in its chosen business. Pointing to the principle that "persons whose future employment prospects have been impaired by government defamation 'lack . . . any constitutional protection for the interest in reputation,'" the Court required Trifax to demonstrate that it had been 'broadly precluded' from continuing in its line of business: "[P]laintiffs must show not only that the government harmed their reputation, but also that the resulting stigma 'altered [their] status in a tangible way.'" Id. at 644 (citing Orange v. District of Columbia, 59 F.3d 1267, 1274 (D.C. Cir. 1995), Kartseva v. Department of State, 37 F.3d 1524 (D.C. Cir. 1995), and Taylor v. Resolution Trust Corp., 56 F.3d 1497 (D.C. Cir. 1995)); see also O'Donnell v. Barry, 148 F.3d 1126, 1141 (D.C. Cir. 1998) (same proposition).

---

[4]    The Court will foresee that the same reasoning establishes Dr. Shaw's defense of qualified immunity; Siegert, after all, was a qualified immunity decision. As Dr. Shaw challenges the existence of plaintiff's causes of action to begin with, it is premature to assert qualified immunity for them. Should the Court allow this action to proceed, Dr. Shaw will ask the Court to undertake the qualified immunity inquiry at the first opportunity: "Until this threshold immunity question is resolved, discovery should not be allowed." 500 U.S. at 231 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1971)).

Unlike cases where government action formally or effectively ended the business of plaintiffs, Mr. Sudnick makes no allegation of what his chosen field is, nor that he has been formally or broadly precluded from working in it.  Mr. Sudnick alleges that he has been informed by some "private and public entities" that they "no longer were interested" in pursuing "financial opportunities with and/or employment" of him, Am. Compl. ¶ 32, and otherwise suggests that he has asked DoD to return to "an appropriately senior-level position" but that "DoD still has not done so." Am. Compl. ¶ 34.  These allegations, as <u>Kartseva</u> instructs, are insufficient:  if a plaintiff "has merely lost one position in her profession but is not foreclosed from reentering the field, she has not carried her burden." <u>Kartseva</u>, 37 F.3d at 1529 (citing <u>Cafeteria Workers v. McElroy</u>, 367 U.S. 886, 895-96 (1961)); <i>compare also, e.g.</i>, <u>Old Dominion Dairy Prods., Inc. v. Secretary of Defense</u>, 631 F.2d 953, 963 (D.C. Cir. 1980) (government contractor "effectively put . . . out of business"); <u>Kartseva</u>, 37 F.3d at 1525 (government translator denied security clearance due to "significant counterintelligence concerns"); <i>with</i> <u>O'Donnell</u>, 148 F.3d at 1141 (dismissing where plaintiff "has presented no concrete evidence (and the circumstances do not demonstrate) that he would have done dramatically better on the job market in the absence of his demotion").

As the Supreme Court stated, "[m]ost defamation plaintiffs attempt to show some sort of special damage and out-of-pocket loss which flows from the injury to their reputation." <u>Siegert</u>, 500 U.S. at 234.  This is exactly what has happened here, and Mr. Sudnick's ordinary defamation claims do not raise constitutional concerns.

### 3.    A <u>Bivens</u> Action Does Not Exist for Claims Redressable Under the Privacy Act.

Mr. Sudnick's <u>Bivens</u> action against Dr. Shaw seeks to proceed in tandem with a Privacy Act claim against the United States.  Oddly, Mr. Sudnick attaches as an exhibit for the Court's consideration an opinion of Judge Walton holding precisely that <u>Bivens</u> claims such as his

must be dismissed because a Privacy Act remedy is available. *See* Pl. Mem. at Ex. 1 (attaching opinion in <u>Hatfill v. Ashcroft</u>, 404 F. Supp.2d 104 (D.D.C. 2005).

Constitutional claims pursuant to <u>Bivens</u> may be implied only if a court finds "no special factors counseling hesitation in the absence of affirmative action by Congress" and where the court finds "no explicit congressional declaration" that injured persons, rather than seeking damages against individual officials, "must instead be remitted to another remedy, equally effective in the view of Congress." <u>Bivens</u>, 403 U.S. at 396-97; *see also* <u>Chung v. United States Dep't of Justice</u>, No. Civ. 00-1912(TFH), 2001 WL 34360430, at *8 (D.D.C. Sept. 20, 2001) (quoting <u>Carlson v. Green</u>, 446 U.S 14, 18-19 (1980)). The ground in this field is too well-trod to belabor the point: this Court and others have found on numerous occasions that the Privacy Act reflects Congress's explicit determination of "what it considers to be appropriate remedies for disclosure and record access violations," and that, therefore, it is "improper" to permit a plaintiff to augment its claims under the Privacy Act with additional remedies under the Constitution. <u>Chung</u>, 2001 WL 34360430 at *10; *see also id.* (collecting cases, including three other opinions of this Court); <u>Hatfill</u>, 404 F. Supp.2d at 116 ("the Privacy Act, being a comprehensive legislative scheme that provides a meaningful remedy for the kinds of harm Dr. Hatfill alleges he has suffered, qualifies it a special factor counselling hesitation against the applicability of <u>Bivens</u>").

Thus, even if plaintiff could articulate some theory of injury sufficient to contemplate a <u>Bivens</u> action, the claim still must be dismissed in favor of his analogous Privacy Act claims.

**B.    Count V Fails to State a Claim for Section 1985 Relief.**

The same fate befalls Mr. Sudnick's statutory claim, styled a conspiracy to deprive Mr. Sudnick of equal protection of the laws under the Ku Klux Klan Act, 42 U.S.C. § 1985(3).[5]

---

[5]   Section 1985(3), the surviving version of Section 2 of the Civil Rights Act of 1871, 17 Stat. 13, provides:

Again, courts do not recognize Section 1985 claims dependent upon mere allegations of defamation. Furthermore, Mr. Sudnick's claim fails to allege a race- or class-based conspiracy— the essential element of a Section 1985 claim.

### 1.   Section 1985 Relief Does Not Exist for Defamation Claims.

Courts have long held, citing the precedents discussed above, that Section 1985(3) claims sounding in defamation do not exist. *See, e.g.*, Cole v. Gray, 638 F.2d 804, 811 (5th Cir. 1981) (defamation alone does not constitute a violation of section 1985) (citing Paul v. Davis, 424 U.S. 693, 710) (1976); Clark v. Solem, 628 F.2d 1120, 1121 (8th Cir. 1980) (per curiam) (same, also citing Paul v. Davis); Williams v. Gorton, 529 F.2d 668, 670 (9th Cir. 1976) ("defamation itself does not establish a cause of action" under section 1985; Shakespeare v. Wilson, 40 F.R.D. 500, 505 (S.D. Cal. 1966) (injury to reputation is "no ground for relief" under section 1985); *accord* Davis v. Glanton, 921 F. Supp. 1421, 1424 (E.D. Pa. 1996) (rejecting argument that state law defamation claim "arises under" section 1985(3) for purposes of exercising removal jurisdiction).

---

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against one or more of the conspirators.

42 U.S.C. § 1985(3).

Although Mr. Sudnick goes to great lengths to make the selection of Iraq commercial cell phone technology the object of a purported conspiracy directed solely at him, his alleged violation of 42 U.S.C. § 1985(3) is no different than his defamation claim previously asserted, *i.e.*, an alleged conspiracy "to publicly stigmatiz[e] Plaintiff Sudnick through a campaign of making false representations and allegations," which "effectively deprived Plaintiff Sudnick of the liberty to work in Plaintiff Sudnick's chosen field." Am. Compl. ¶ 62. This claim is not a civil rights claim, it is a defamation claim, and it should fail for the same reasons discussed above.

**2.    Section 1985(3) Relief Does Not Exist for Non-Race or Non-Class Motivated Conspiracies.**

In addition, plaintiff's factual allegations are incompatible with the essential elements of a valid Section 1985(3) claim. As a Reconstruction-era statute, the "central purpose" of the Ku Klux Klan Act was true to its name: "combating the violent and other efforts of the Klan and its allies to resist and to frustrate the intended effects of the Thirteenth, Fourteenth, and Fifteenth Amendments." United Bhd. of Carpenters and Joiners of America v. Scott, 463 U.S 825, 837 (1983). Modern attempts to expand the breadth of this statute, to turn it into a "general federal tort law," have failed:

> In *Griffin* . . . we recognized the "constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law." *Griffin*, 403 U.S., at 102, 91 S.Ct., at 1798. That was to be avoided, we said, "by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment," *ibid.*—citing specifically Representative Shellabarger's statement that the law was restricted "'to the prevention of deprivations which shall attack the equality of rights of American citizens; that any violation of the right, the *animus* and effect of which is to strike down the citizen, to the end that he may not enjoy equality of rights as contrasted with his and other citizens' rights, shall be within the scope of the remedies . . . .'" *Id.,* at 100, 91 S.Ct., at 1797 (emphasis in original), quoting Cong. Globe, 42d Cong., 1st Sess., App. 478 (1871). We said that "[t]he language [of § 1985(3)] requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus

behind the conspirators' action." 403 U.S., at 102, 91 S.Ct., at 1798
(emphasis in original).

Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268-69 (1993) (first ellipses added)

(quoting Griffin v. Breckenridge, 403 U.S. 88 (1971)).

Adhering to this mandate, the D.C. Circuit has held that an "essential element" of a

section 1985(3) conspiracy claim is "the allegation of some class-based, invidiously discriminatory

animus behind the co-conspirators' actions." LaRouche v. Fowler, 152 F.3d 974, 987 n.14 (D.C.

Cir. 1998). "This requirement is to be read narrowly to avoid converting Section 1985 into general

federal tort law." Id. (citing Bray, 506 U.S. at 267-68).

It is readily apparent that Mr. Sudnick's Amended Complaint does not allege—nor

could it—these essential requirements of a Section 1985(3) claim. Mr. Sudnick alleges a

conspiracy (a conclusory allegation of one, at best) the purpose of which was "depriving Plaintiff

Sudnick, directly or indirectly, of the equal protection of the laws of the United States," so as to

injure him in his asserted liberty interest in his "good name, reputation, honor and/or integrity," as

well as his "present employment and future opportunity." Am. Compl. ¶ 59. The claim fails on all

counts: the assertion of wrong is neither class-based nor is it motivated by any invidiously

discriminatory animus. It is, again, merely an assertion of wrong directed at Mr. Sudnick

individually and motivated by an alleged desire to injure his reputational and associated economic

interests. Accordingly, the allegations fail to state a claim.

**C.    Plaintiff's Bivens and Section 1985 Claims Are Barred Under the One-Year
        District of Columbia Statute of Limitations.**

In the event the Court still considers one or both of Counts IV or V a viable claim,

each still must be dismissed under applicable limitations law. In arguing for the opportunity to

amend his deficient complaint, Mr. Sudnick urged that "[u]nder the law of the [sic] this Circuit, the

statute of limitations for Bivens and 42 U.S.C. 1985(3) claims is three years." Pl. Mem. at 4.

Plaintiff is wrong—this Circuit holds that a <u>Bivens</u> action sounding in damage to reputation is subject to the District of Columbia's one-year statute of limitations. The same principles requiring the Court to borrow the "most analogous" state limitations period for <u>Bivens</u> claims apply with equal force to the selection of a limitations period for the Section 1985(3) claim. This one-year limitations period provides yet another independent reason for dismissing Counts IV and V of the Amended Complaint.

> **1.    The Applicable Statute of Limitations for <u>Bivens</u> Actions and Section 1985 Claims Sounding in Defamation is the Applicable State Law Defamation Limitations Period.**

It is the law in this Circuit that the statute of limitations for a <u>Bivens</u> action where damage to reputation is central to the claim is the applicable state law defamation limitations period—here, the one-year limitation period borrowed from D.C. Code § 12-301(4). *See* <u>Doe v. United States Dep't of Justice</u>, 753 F.2d 1092, 1114-15 (D.C. Cir. 1985); *see also* <u>Church of Scientology v. Foley</u>, 640 F.2d 1335, 1335 (D.C. Cir. 1981) (en banc) (per curiam). In <u>Doe</u>, much as here, the plaintiff filed a <u>Bivens</u> action against various Department of Justice officials alleging "that they disseminated false and defamatory statements" which "destroyed her reputation as a sober and serious person." <u>Doe</u>, 753 F.2d at 1114. Applying the familiar precept that a federal court will look to an analogous state limitations period in the absence of a federal statute of limitations, <u>id.</u>, the D.C. Circuit affirmed the District Court's application of the D.C. one-year limitations period: "We can discern no difference in the practicalities of or the policies behind a <u>Bivens</u> action for the deprivation of a liberty interest in reputation and an ordinary defamation claim." <u>Id.</u> at 1114-15.

Mr. Sudnick cites <u>Hobson v. Brennan</u>, 625 F. Supp. 459 (D.D.C. 1985) and similar cases, seeking to establish that the applicable limitations period should be three years under D.C. Code § 12-301(8). *See* Pl. Mem. at 4 n.5. <u>Hobson</u>, one of the first decisions to wade into the

federal common law thicket left by the Supreme Court's decision in <u>Garcia v. Wilson</u>, 471 U.S. 261 (1975), expressly assumed, *without deciding*, that the three-year D.C. statute of limitations should be borrowed for a "complex" conspiracy alleging a variety of wrongs; in that case, federal principles of uniformity counseled in favor of applying a three-year limitations period. *See* 625 F. Supp. at 464 (assuming three-year period without deciding issue). Indeed, the <u>Hobson</u> court specifically expected that "run-of-the-mill" complaints could be prepared and filed within the one-year limitations period contemplated under 12-301(4). <u>Id.</u> The D.C. Circuit has tolerated this functional inquiry since then and has never departed from the <u>Doe</u> analysis where defamation claims are clearly implicated. *See, e.g.*, <u>Crocker v. Piedmont Aviation, Inc.</u>, 49 F.3d 735, 744 (D.C. Cir. 1995) (declining to apply one-year period, but citing <u>Doe</u> and noting that Section 12-301(4)'s one-year limitations period governs defamation).

There is nothing so complex about the nature of Mr. Sudnick's injury-to-reputation claims that would counsel borrowing any limitations period other than the District of Columbia's specific limitations period for defamation claims—indeed, there is a sound reason to insist upon it. The District of Columbia already has decided the appropriate limitations period for defamation claims, and to allow such a claim to defeat the specifically-proscribed limitations period merely by calling itself a constitutional claim is a manipulation of federal policy, not a furtherance of it.

**2.      The District of Columbia's One-Year Statute of Limitations Bars Counts IV and V of the Amended Complaint.**

In his previous motion to dismiss the original Complaint, Dr. Shaw established—and Mr. Sudnick did not dispute—that all of Mr. Sudnick's causes of action sounding in defamation were time-barred. As the factual assertions of the Amended Complaint (insofar as the <u>Bivens</u> and Section 1985 claims of Counts IV and V are concerned) track the original Complaint verbatim, it follows that these new counts will be time-barred as well.

As noted above, the District of Columbia has established, by statute, several statutes of limitations governing common-law tort claims, including a one-year limitations period in D.C. Code § 12-301(4) for claims alleging libel, slander, and similar intentional torts. *See* Church of Scientology of California v. Foley, 640 F.2d 1335, 1338 (D.C. Cir. 1981) (defamation claims subject to one-year statute of limitations under District of Columbia law); Grunseth v. Marriott Corp., 872 F. Supp. 1069, 1074 (D.D.C. 1995) (same); Mullin v. Washington Free Weekly, Inc., 785 A.2d 296, 298 (D.C. 2001) (same). "District of Columbia courts adhere strictly to the one-year limitation," dismissing claims brought mere days beyond the one-year statute. Jin v. Ministry of State Security, 254 F. Supp. 2d 61, 68 (D.D.C. 2003) (noting that Mullin dismissed complaint brought one year and three days after publication).

The Amended Complaint contains seven specific allegedly defamatory statements made by Dr. Shaw in 2004. Paragraph 23 of the Amended Complaint lists these statements, which range in date from April 12, 2004 (the earliest) to June 14, 2004 (the latest). Although plaintiff's April 10, 2006 Complaint concedes that he knew about each of these statements shortly after it was made, *see* Compl. ¶¶ 23(A)-(G), Am. Compl. ¶¶ 23(A)-(G), not one of these statements is remotely within the one-year statute of limitations provided by D.C. Code § 12-301(4).

Moreover, assuming *arguendo* that Dr. Shaw could be held liable for subsequent news reports made "as a consequence" of the statements to reporters enumerated in paragraph 23, Am. Compl. ¶ 24, those news reports fall outside of the statute of limitations as well. Paragraph 24 of the Amended Complaint identifies three specific news reports allegedly prompted by Dr. Shaw's disclosures: a May 9, 2004 article in the *Washington Times*; a June 6, 2004 article in the *Washington Times*; and a March 29, 2005 article in *Newsmax*.[6] Just as with the alleged disclosures

---

[6] It is unclear when plaintiff first learned of the news reports identified in paragraph 24 of the Amended Complaint, but it is also irrelevant. Under District of Columbia law, the limitations period for claims of defamation in the mass media begins to run on the date of publication, not the date of discovery by the plaintiff. *See* Mullin, 785 A.2d at 299; Wallace v. Skadden, Arps, Slate,

by Dr. Shaw to reporters set out in paragraph 23, each one of these articles was published outside of the one-year statute of limitations period.  None of them can sustain a claim for defamation against Dr. Shaw at this late date.

## CONCLUSION

For the foregoing reasons, defendant John A. Shaw respectfully requests that the Court dismiss Counts Four through Seven of the Amended Complaint, and that Dr. Shaw be dismissed as a party defendant to this action.

Respectfully submitted,

AEGIS LAW GROUP LLP

By:    _____/s/ Paul Rauser_____
Paul C. Rauser (D.C. Bar No. 461722)
901 F Street, N.W., Suite 500
Washington, D.C. 20004
T: 202-737-3500
F: 202-737-3330

November 13, 2006              *Attorneys for Defendant John A. Shaw*

---

Meagher & Flom, 715 A.2d 873, 882 (D.C. 1998) ("[d]efamation occurs on publication, and the statute of limitations runs from the date of publication"); Foretich, 741 F. Supp. at 252 (same); Thomas v. News World Communications, 681 F. Supp. 55, 73 (D.D.C. 1988) (same).

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DANIEL SUDNICK,              )
                                      )
    Plaintiff,             )
                                        )
                                        )
           v.              )          Civil Action No.
                                        )          06-00654 (ESH)
DEPARTMENT OF DEFENSE and    )
JOHN A. SHAW,            )
                                        )
    Defendants.         )
_____)

## **PROPOSED ORDER**

Upon consideration of Defendant John A. Shaw's Motion to Dismiss the Amended

Complaint, it is hereby

ORDERED that the motion is granted, and it is further

ORDERED that Counts Four, Five, Six, and Seven of the Complaint are dismissed

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter

jurisdiction and failure to state a claim, and it is further

ORDERED that defendant John A. Shaw be and hereby is dismissed as a party defendant

to this action.

Dated:                       _____
                                  JUDGE ELLEN S. HUVELLE
                                  UNITED STATES DISTRICT JUDGE