## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DANIEL SUDNICK,             )
                                )
           Plaintiff,        )
                                )
           v.                )        Civil Action No.
                                )        06-00654 (ESH)
                                )
DEPARTMENT of DEFENSE and   )
JOHN A. SHAW,           )
                                )
           Defendants.     )
_____)

## PLAINTIFF DANIEL SUDNICK MEMORANDUM IN OPPOSITION TO
## DEFENDANT SHAW'S MOTION TO DISMISS THE AMENDED COMPLAINT

**I.**      **INTRODUCTION**

Plaintiff Daniel Sudnick, through undersigned counsel, opposes Defendant John A. Shaw's motion to dismiss Counts Four, Six and Seven of the Amended Complaint (the "Disputed Counts") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). As to the Fifth Cause of Action (42 U.S.C. 1985(3) conspiracy), today Plaintiff Sudnick, through counsel, has submitted to the Court a Rule 41 motion to voluntarily dismiss such Fifth Cause of Action, thus mooting Defendant Shaw's motion to dismiss as to such fifth cause of action.

For the reasons discussed herein, the Court should deny the motion to dismiss as to the Disputed Counts and find as that: (1) the Court possesses subject matter jurisdiction over the Fourth Cause of Action (*Bivens* Violation of Fifth Amendment Due Process Rights) notwithstanding the Government's prior Westfall Act certification as to state law tort claims brought by Plaintiff Sudnick against Defendant Shaw; (2) the fourth

cause of action, as well as the sixth cause of action (defamation – false and malicious statements) and the seventh cause of action (invasion of privacy, false light) state claims upon which the Court can grant relief.

## II.    <u>ARGUMENT</u>

Defendant Shaw argues that Plaintiff Sudnick's *Bivens* claim against him (Fourth Cause of Action) should be dismissed on four grounds: (1) as a predicate to the three subsequent grounds of dismissal, that the *Bivens* claim stated in the Amended Complaint does not meet the "heightened pleading standard" applicable under District of Columbia Circuit precedents, and instead constitutes at most a claim for defamation; (2) the Government's Westfall Act certification immunizes Defendant Shaw for a *Bivens* claim by virtue of the Government's finding that Defendant Shaw was "acting in the scope and course" of his employment with the United States Department of Defense as to the claim for defamation; (3) Plaintiff Sudnick cannot maintain a *Bivens* claim against Defendant Shaw for money damages, declaratory judgment and injunctive relief because the Privacy Act provides a comprehensive remedy; and (4) the one-year District of Columbia statute of limitations applicable to defamation claims applies as a time-bar to the stated *Bivens* claims.

Furthermore, as to Amended Complaint Causes of Action Six and Seven (defamation and false light arising out of acts occurring within one year of the filing of the complaint, as alleged in Amended Complaint paragraphs 40 and 40A), Defendant Shaw asserts that the these claims too are covered by the Government's Westfall Act certification, and, thus, that the Court has no jurisdiction to entertain these claims because

Plaintiff Sudnick has not yet availed himself of and exhausted administrative remedies under the Federal Tort Claims Act.

For each of the reasons discussed below, Defendant Shaw is wrong as to each ground of dismissal.

A.    **Notwithstanding Defendant Shaw's Various Contentions to the Contrary, the Court Has Jurisdiction Over Plaintiff's *Bivens* Cause of Action, and the *Bivens* Cause of Action States a Claim Upon Which the Court Can Grant Relief**

(1)    **STANDARD OF REVIEW**

In deciding Defendant Shaw's motion to dismiss, it must be kept in mind that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In applying that standard, it is clear that Plaintiff Sudnick has stated a *Bivens* claim that is entitled to go forward – and <u>not</u> merely a non-Constitutional defamation claim, as understandably (but erroneously) urged by Defendant Shaw.

(2)    **THE APPLICABLE HEIGHTENED-PLEADING STANDARD FOR *BIVENS* CLAIMS**

The analysis of the constitutional claim here must begin with two due process principles. First, as the Court of Appeals for the District of Columbia Circuit has found:

> [A] person's "right to ... follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' ... concept[ ] of the Fifth Amendment." *Greene v. McElroy*, 360 U.S. 474, 492 (1959); *see also Kartseva v. Dep't of State*, 37 F.3d 1524, 1529 (D.C. Cir. 1994) (acknowledging a "constitutionally protected 'right to follow a chosen trade or profession' " (quoting *Cafeteria & Restaurant Workers Local 473 v. McElroy*, 367 U.S. 886, 895-96 (1961))).

*Trifax Corp. v. District of Columbia*, 314 F.3d 641, 643 (D.C. Cir. 2003).

Second, persons whose future employment prospects have been impaired by government

defamation "lack ... any constitutional protection for the interest in reputation."  *Siegert v.*

*Gilley*, 500 U.S. 226, 234 (1991). As the *Trifax* Court well stated:

> This principle derives from Paul v. Davis, 424 U.S. 693 (1976), which held that
> police distribution of a flyer labeling the plaintiff an "Active Shoplifter[ ],"
> though "seriously impair[ing] his future employment opportunities," infringed no
> liberty interest because it harmed only the plaintiff's reputation.  *Id.* at 697, 711-
> 12. Reiterating this principle in *Siegert v. Gilley*, the Supreme Court held that a
> plaintiff whose former government employer sent an admittedly libelous letter of
> reference that "would undoubtedly ... impair his future employment prospects"
> stated no constitutional violation "so long as such damage flows from injury
> caused by the defendant to a plaintiff's reputation." 500 U.S. at 234.

*Trifax*, 314 F.3d 643.

Again, understandably but erroneously, Defendant Shaw seizes on this second due

process principle to urge that the Court dismiss Plaintiff Sudnick's *Bivens* claim.

However, as *Trifax* instructs, the analysis does not end there:

> The case before us reveals the tension between these two lines of due process
> cases. Had the District formally debarred Trifax from bidding on government
> contracts, that would have unquestionably constituted a deprivation of liberty.
>
> Conceding that it was not formally debarred, however, Trifax claims to have
> suffered "broad preclusion" from government contracting. Appellant's Rep. Br. at
> 8-11. In view of the fact that formal debarment would constitute a deprivation of
> liberty, it would be odd if broad preclusion, equivalent in every practical sense to
> formal debarment, did not also constitute a deprivation simply because the harm
> was reputational.
>
> For exactly this reason, and notwithstanding the strong language in *Paul v. Davis*
> and *Siegert v. Gilley*, **we have held on several occasions that government**
> **stigmatization that broadly precludes individuals or corporations from a**
> **chosen trade or business deprives them of liberty in violation of the Due**
> **Process Clause**.
>
> For example, in *Old Dominion Dairy Products, Inc. v. Secretary of Defense*, a
> government contractor unfavorably audited by the government, though not

formally debarred, was "effectively put ... out of business." 631 F.2d at 963. **We held that "when the Government effectively bars a contractor from virtually all Government work due to charges that the contractor lacks honesty or integrity, due process requires that the contractor be given notice of those charges as soon as possible and some opportunity to respond to the charges before adverse action is taken."** *Id.* at 955-56. We reached a similar result in *Kartseva v. Department of State*, where a government contractor fired a Russian translator after the State Department informed the contractor that employing the translator raised " 'counterintelligence concerns.' " 37 F.3d at 1525 (internal citation omitted). We held that a liberty interest was implicated if the State Department's action (1) "formally or automatically excludes Kartseva from work," or (2) "does not have this binding effect, but nevertheless has the broad effect of largely precluding Kartseva from pursuing her chosen career as a Russian translator." *Id.* at 1528 (emphasis in original).

In still another due process employment case, *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497 (D.C. Cir. 1995), **we relied on *Kartseva* for the proposition that "government action precluding a litigant from future employment opportunities will infringe upon his constitutionally protected liberty interests ... when that preclusion is either sufficiently formal or sufficiently broad."** *Id.* at 1505.

**These employment and government contracting due process cases establish what we call a "reputation plus" requirement--plaintiffs must show not only that the government harmed their reputation, but also that the resulting stigma "altered [their] status in a tangible way."** *Orange v. Dist. of Columbia*, 59 F.3d 1267, 1274 (D.C. Cir. 1995) (internal quotation marks and citations omitted) (alteration in original). **This "change in status requirement,"** *id.* (internal quotation marks omitted), **explains why** *Paul v. Davis* **and** *Siegert v. Gilley* **have no applicability to the claims here: Both cases involve harms analogous to common-law defamation, while the "reputation plus" cases involve harms approaching, in terms of practical effect, formal exclusion from a chosen trade or profession, as in** *Old Dominion*.

**The key inquiry then is this: Has the government, by attacking personal or corporate reputation, achieved in substance an alteration of status that, if accomplished through formal means, would constitute a deprivation of liberty? For this reason, plaintiffs claiming "broad preclusion" must show that "the government 'has seriously affected, if not destroyed, [their] ability to obtain employment [or contracts] in [their] field.' "** *Taylor*, 56 F.3d at 1506 (quoting Greene v. McElroy, 360 U.S. at 492).

*Trifax*, 314 F.3d 644 (emphasis added)

###### (3)    PLAINTIFF SUDNICK HAS STATED A REPUTATION-PLUS *BIVENS* CLAIM, <u>NOT</u> MERELY A NON-CONSTITUTIONAL DEFAMATION CLAIM

Plaintiff Sudnick has alleged that Defendant Shaw, by attacking Plaintiff Sudnick's personal reputation while serving as Undersecretary of Defense, through his acts alleged in the Amended Complaint, achieved <u>in substance an alteration of Plaintiff Sudnick's status that, if accomplished through formal means, would constitute deprivation of liberty.</u>  Namely, that Plaintiff Sudnick suffered harms approaching, in terms of practical effect, formal exclusion from his chosen trade or profession, as in *Old Dominion*, by seriously affecting, if not destroying, his ability to obtain employment [or contracts] in his field.

The Amended Complaint alleges this sufficiently to withstand a motion to dismiss, as follows:

O    Amended Complaints Paragraphs 23 (at p.17), second misnumbered paragraph 23 (at p.18), 24 and 40 allege the attacks by Defendant Shaw, while he was an Undersecretary of Defense, on Plaintiff Sudnick's personal reputation, without any of the required due process of law;

O    Amended Complaints Paragraphs 31, 32, 34 and 55 state the alteration, in substance, of Plaintiff Sudnick's status that, if accomplished through formal means, would constitute deprivation of liberty:  formal exclusion from Plaintiff Sudnick's chosen trade or profession:

31.    At the time of the Illegal DoD Sudnick Privacy Act Information Disclosures, Plaintiff was seeking employment and otherwise pursuing financial opportunities.

32.     Subsequent to, and as a direct cause of the Illegal DoD Sudnick Privacy Act Information Disclosures Plaintiff Sudnick was informed by private and public sector entities (including DoD) and persons with whom Plaintiff Sudnick was pursuing present and future financial opportunities and employment that such entities and persons had read the news reports of the unfounded allegations and no longer were interested in pursuing present or future financial opportunities with and/or employment of Plaintiff Sudnick.

*       *       *

34.     Nevertheless, although plaintiff has expressed interest in being re-employed by DoD in an appropriately senior-level position, DoD still has not done so, stating that the allegations that appeared in the press were reasons why DoD could not do so.

*       *       *

55.     Defendant Shaw, in his individual capacity, violated Plaintiff Sudnick's Fifth Amendment right by publicly stigmatizing Plaintiff Sudnick through a campaign of making false representations and allegations against Plaintiff Sudnick within and outside of DoD, including to print and broadcast media (as alleged above), without notice or any opportunity to be heard and without any avenue for appeal.  Such action by Defendant Shaw effectively deprived Plaintiff Sudnick of the liberty to work in Plaintiff Sudnick's chosen field.

Defendant Shaw attacks these allegations as constituting an account of not getting some jobs, but maybe getting others – in other words, something less than the legally-defined "broad preclusion" that seriously affected, if not destroyed, Plaintiff Sudnick's ability to obtain employment in his field, and cites to numerous cases (including *Trifax* and the cases cited therein) as support.  Defendant Shaw asserts that Plaintiff Sudnick's *Bivens* claim is defective because, among other things, Plaintiff Sudnick does not allege what his field is, or how Shaw's (and, therefore, the Government's) attack on Plaintiff Sudnick's personal reputation has seriously affected, if not destroyed, Plaintiff Sudnick's ability to obtain employment or contracts in his field.

This, of course, is the usual course of attack. But here, the attack fails, because the facts depart from those in the cases that Shaw relies upon. By way of example, in *Trifax*, the government contractor defendant obtained contracts in its field.

But here, that was not so, and still is not so.

If, for argument's sake, that the Court may be inclined to find the current pleadings deficient in this regard, Plaintiff Sudnick is prepared to further state the following set of facts by way of amendment:

O    Prior to becoming a senior government official as the Coalition Provisional Authority Senior Advisor to the Ministry of Telecommunications, Plaintiff Sudnick's field was senior management, serving in positions of successively greater responsibility, for various private firms engaged in information technology, advisory services and U.S. Government contracting.

O    From 1990-1991, Plaintiff Sudnick served in the federal government at the level of a special assistant to the Assistant Secretary of Defense for Production and Logistics, Executive Office of the President, Washington, D.C.

O    Thus, Plaintiff Sudnick's field at the time of the Government's/Shaw's attack on his reputation, was both as a senior government official and as senior management within private sector firms engaged in U.S. government contracting and private advisory services.

O    As a consequence of the Government's/Shaw's attacks on Plaintiff Sudnick's reputation, which were put into the public domain as alleged in the Amended Complaint, the Government/Shaw "has seriously affected, if not destroyed, Plaintiff Sudnick's ability to obtain employment in his field. The consequence of the

government's/Shaw's attacks on Plaintiff Sudnick's reputation (effectively falsely labeling him as an untrustworthy criminal) was that Plaintiff Sudnick was and continues to be denied employment for all senior management positions with Government contractors and U.S. Government agencies for which he applied and was being considered prior to the Government's/Shaw's attacks on his credibility (as alleged in the Amended Complaint) and for all positions in his that Plaintiff Sudnick has sought thereafter in his field.

Plaintiff Sudnick respectfully submits that facts stated in the Amended Complaint meet the *Bivens* "heightened pleading standard", which demands that a plaintiff plead the facts surrounding the alleged violation with "sufficient detail to enable the district court to decide at the outset whether the action may proceed to discovery and trial" over a qualified immunity defense. *See Hunter v. D.C.*, 943 F.2d 69, 75 (D.C. Cir. 1991). But, in any event, the additional statements of fact set forth immediately certainly would satisfy the standard.

In light of the foregoing, Plaintiff Sudnick respectfully urges the Court to deny Defendant Shaw's motion to dismiss his *Bivens* claim on this ground, and, if deemed necessary by the Court, to grant Plaintiff Sudnick leave to amend his *Bivens* claim to allege the facts stated immediately above.

**(4)    BY LAW, THE GOVERNMENT'S WESTFALL ACT CERTIFICATION CANNOT COVER OF IMMUNIZE DEFENDANT SHAW AGAINST PLAINTIFF SUDNICK'S *BIVENS* CLAIM**

As a second ground of dismissal of the *Bivens* claim, Defendant Shaw argues that the Government's Westfall Act certification – which as a matter of law <u>cannot</u> encompass *Bivens* claims – must result in the ouster of the Court's jurisdiction by converting the

*Bivens* claims into Federal Tort Claims Act (FTCA) claims for which Plaintiff Sudnick has not exhausted FTCA administrative remedies.

This is an ingenious argument. Ingeniously wrong. Unless the *Bivens* claims are not really *Bivens* claims (but instead constitute defamation-only claims) then, by law, Defendant Shaw's argument absolutely fails. And, as established immediately above, Plaintiff Sudnick's *Bivens* do allege violations of his Constitutionally-protected Liberty interest. Defendant Shaw acknowledges the true of this failure in his argument:

> Of course, section 2679(b)(2) of the Westfall Act provides two exceptions to the broad statutory immunity of section 2679(b)(1) discussed above. The first exception concerns actions against employees of the Government "brought for a violation of the Constitution of the United States," i.e., *Bivens* actions. 28 U.S.C. 2679(b)(2)(A).

Defendant Shaw Motion to Dismiss at 9. In sum, Congress expressly provided in the Westfall Act that no Westfall Act certification can ever act to immunize any government official (including Defendant Shaw) against a *Bivens* claim or deprive a federal court of jurisdiction over a *Bivens* claim.

What Defendant Shaw does not mention – but which nevertheless must be considered – is that the Federal Tort Claims Act does <u>not</u> apply to a civil action against a government employee "which is brought for a violation of the Constitution of the United States. 28 U.S.C. 2679(b)(2)(A). In other words, Congress also expressly provided that the Federal Tort Claims Act does <u>not</u> cover *Bivens* claims. Accordingly, there are neither any FTCA remedies available for *Bivens* claims, nor any requirement for exhaustion of FTCA administrative remedies as a pre-condition to the Court exercising jurisdiction over *Bivens* claims.

Accordingly, it is up to the Court – not the Department of Justice through the Westfall Act certification process – to determine whether Plaintiff Sudnick has stated a *Bivens* claim.  If so, the Court has jurisdiction over the *Bivens* claim – notwithstanding the Government's prior Westfall Act certification as to the state law tort claims previously asserted against Defendant Shaw and the Court's dismissal of <u>only</u> those state law tort claims owing to lack subject matter jurisdiction arising from the failure to exhaust FTCA remedies.

For these reasons, the Court should deny Defendant Shaw's motion to dismiss the *Bivens* claim on this ground.

      **(5)**     **THE PRIVACY ACT DOES NOT PRECLUDE PLAINTIFF SUDNICK FROM MAINTAINING, AND THE COURT ENTERTAINING, *BIVENS* DECLARATORY RELIEF AND INJUNCTIVE RELIEF ACTIONS AGAINST DEFENDANT SHAW. FURTHER THE ISSUE OR PRIVACY ACT PRECLUSION OF A *BIVENS* CLAIM AGAINST DEFENDANT SHAW IS NOT YET RIPE.**

As a third ground of dismissal of the Bivens claim, Defendant Shaw urges that Court not recognize the Bivens claim because a comprehensive statutory remedy – the Privacy Act – remains intact and available to Plaintiff Sudnick.

Defendant Shaw attempts to makes of his perception that claims in the Amended Complaint are virtual "carbon-copies" of the original Complaint.  However, Defendant Shaw overlooks two critical differences between the original Complaint and the Amended Complaint:

      1.     The Amended Complaint seeks declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. 2201, that Defendant Shaw has committed a *Bivens* offense and violated the Privacy Act; and

2.      The Amended Complaint seeks permanent injunctive relief against Defendant Shaw to restrain Defendant Shaw from ever again alleging or communicating that Plaintiff Sudnick participated in any of the alleged illegal conduct, as Shaw communicated to the media and others.

In *Hatfill v. Ashcroft* this Court has ruled against just such a motion to dismiss by the Government of a like action, as follows:

> The defendants state that "the claims for injunctive and declaratory relief should also be dismissed because 'declaratory and injunctive relief are not available to the extent that Dr. Hatfill had an adequate remedy at law for those claims." Defs. Mem. At 44. On the other hand, Dr. Hatfill correctly points out that a declaratory judgment may be granted whether or not further relief could be sought. Pl's Opp. At 44 (citing 28 U.S.C. 2201(a). Moreover, as Dr. Hatfill notes, "district courts enjoy broad discretion in awarding injunctive relief. *Id.* (citing *Wagner v. Taylor*, 836 F.2d 566, 575 (D.C. Cir. 1987).
>
> . . . However, having stated a viable claim as to the alleged Fifth Amendment violation, Dr. Hatfill's demand for injunctive and declaratory relief survives the defendants' dismissal motion even though his demand for monetary relief does not. Accordingly, the defendants' motion to dismiss these forms of relief attendant to the alleged Fifth Amendment violation is denied.

*Hatfill v. Ashcroft*, Memorandum Opinion at 27-28, Sep. 16, 2006,. D.D.C., Civ. No. 03-1793).

For the same reason, Plaintiff Sudnick's demand for declaratory and injunctive relief must survive Defendant Shaw's dismissal motion.

As to Plaintiff Sudnick's *Bivens* claim demand for monetary relief, Plaintiff Sudnick submits that the current posture of the case makes the issue not ripe for decision on the grounds urged by Defendant Shaw – namely, that Plaintiff Sudnick enjoys comprehensive statutory remedies under the Privacy Act for the harm done by the alleged wrongful acts of Shaw. Defendant Shaw has not established this is so. In fact, the Department of Defense, in its answer to the Complaint states otherwise:

SECOND DEFENSE

Plaintiff's Complaint fails to state a claim as to which relief may be granted against the Department of Defense.

*See* Answer of Defendant Department of Defense at p1.

Answer to Paragraph 21 of the Complaint (that information released by Shaw to the various media reporters and outlets was subject to the Privacy Act:

> "To the extent that a response is deemed necessary, those allegations are denied

Answer to Paragraph 25 of the Complaint (that Shaw was violating the Privacy Act):

> "To the extent a response is deemed necessary, those allegations are denied.

Answer to First Cause of Action (Privacy Act – Improper Dissemination):

> "To the extent a response is deemed necessary, they are denied."

Answer to Second Cause of Action (Privacy Act – Improper Dissemination):

> "To the extent a response is deemed necessary, they are denied."

Answer to Third Cause of Action (Failure to Account for Privacy Act Disclosures):

> "To the extent a response is deemed necessary, they are denied."

Plaintiff Sudnick should not be put to the choice of such an election at this preliminary stage in the proceeding.

Furthermore, when the issue becomes ripe for decision – *e.g.*, it appears certain that both the Privacy Act and *Bivens* monetary claims might go forward, then the issue may be raised again by the parties.

To the extent that a greater reply is needed now, Plaintiff Sudnick does <u>not</u> concede or agree that the Privacy Act provides a comprehensive statutory scheme of remedies that will compensate him adequately for the harm caused by Defendant Shaw's *Bivens* violations.[1]

Accordingly, Plaintiff Sudnick respectfully urges the Court to deny Defendant Sudnick's motion to dismiss the *Bivens* claims on this ground.

### (6)     THE DISTRICT OF COLUMBIA THREE-YEAR STATUTE OF LIMITATIONS APPLIES TO PLAINTIFF SUDNICK'S *BIVENS* CLAIM

As a fourth ground of dismissal of the Bivens claim, Defendant Shaw argues that the District of Columbia's one-year statute of limitations for libel and slander should be applied as a time-bar, citing to *Doe v. United States Department of Justice*, 753 F.2d 1092, 1114-1115.

This argument mischaracterizes Plaintiff Sudnick's *Bivens* claims as being of slander or libel.  Instead, the *Bivens* claims are more in essence and akin to personal injury – that is, Defendant Shaw interfering with Plaintiff Sudnick's Constitutionally-protected Liberty interest in his right to follow his chosen trades/professions. Conversely, in *Doe*, the claims involved <u>only</u> deprivation of a liberty interest in reputation – and not interference in a Liberty interest in pursuing one's chosen trade or profession resulting from wide-spread government stigmatization.

Defendant Shaw argues that this is a simple case, and that one year should suffice to account for the practicalities of litigating and the substantive policies underlying the federal claim.

---

[1] Plaintiff Sudnick notes his observation that this issue is not yet settled law – *e.g.*, it appears to Plaintiff Sudnick that as yet the Supreme Court has not yet spoken on this precise issue.  Accordingly, Plaintiff Sudnick does not concede the issue.

The history of this litigation shows otherwise.  As yet – more than eight months after the filing of the case – there has been no discovery.  As alleged in the Complaint, there was a concerted attempt on the part of Shaw to conceal himself as the source of the Privacy Act/legally-protected-against-disclosure information concerning Plaintiff Sudnick that was leaked to the press for the express purpose of damaging Plaintiff Sudnick.  Even now, the Department of Defense has given no account of all of the disclosures of the actionably false information and statements.

The policy considerations arguing against application of a statute of limitations greater than one year for a *Bivens* action against a Government official, coupled with a Privacy Act action against the employing agency of the official, are found in Congress providing a two-year statute of limitations for the commencement of both Privacy Act and Federal Tort Claims Act actions related to that conduct.  It makes no practical or legal sense that federal considerations attendant to such *Bivens* claims would be served by a Court applying a shorter statute of limitations to the offending federal official than to the Government itself.  Accordingly, the Court should apply the longer D.C. statute of limitations – three years under D.C. Code Section 12-3091(8) – to this action.

In this regard, Plaintiff Sudnick refers the Court to *Hobson v. Brennan*, 625 F.Supp. 459, where, in the wake of the Supreme Court's landmark decision in *Wilson v. Garcia*, 471 U.S. 261, 105 S. Ct. 1398 (1984), this Court applied the three-year D.C. statute of limitations provision of D.C. Code Section 12-3091(8) to a 41 U.S.C 1985(3) conspiracy to violate the First Amendment rights of certain plaintiffs arising out of the FBI COINTELPRO program, against the urgings of all defendants.

For these reasons, Plaintiff Sudnick respectfully requests the Court to deny

Plaintiff's motion to dismiss the *Bivens* claim on this ground.

**B.**    **Plaintiff Sudnick's Sixth Cause of Action (Defamation) and Seventh Cause of Action (Invasion of Privacy – False Light) State Claims Over Which the Court Has Jurisdiction and May Grant Relief, Notwithstanding Defendant Shaw's Objections**

Defendant Shaw argues that the Westfall Act bars Plaintiff Sudnick's Sixth and

Seventh Causes of Action (for defamation and false light, respectively).

Defendant Shaw contends that the alleged false and malicious statements made to

a Legal Time reporter on or about 15 June 2006 – by which Shaw falsely and maliciously

stated to the reporter that Plaintiff Sudnick is <u>currently</u> under active criminal investigation

by the Department of Defense – come within the scope of the Government's Westfall Act

Certificate.  Thus, says Defendant Shaw, the Court is without subject matter jurisdiction

over these claims because Plaintiff Sudnick has not exhausted administrative remedies

under the Federal Tort Claims Act.[2]

Defendant Shaw's effort to avoid liability for his wrongful acts by invoke the

Westfall Act is without any legal merit.

First, the Government expressly limited the scope of its Westfall Act certification

that Shaw was acting within the scope of his employment for purposes of the Westfall

Act to those claims by Sudnick pertaining to:

"[I]ncidents that occurred during his term of employment at the Department of

Defense from August 2001 until December 2004.  *See* Exhibit A to Motion of the

---

[2] Defendant Shaw also apparently seeks to have Causes of Action Six and Seven dismissed for purported failure to "specify the time, place, content, speaker and listener of the alleged defamatory material".  *See* Shaw Motion to Dismiss at 10.  Plaintiff Sudnick disagrees.  Causes of Action Six and Seven are not defective in such regard, having alleged precisely those facts.  *See* Amended Complaint at Paragraph 40A.

United States to Substitute and Dismiss (Certification of Phyllis J. Pyles, Director,

Torts Branch, Civil Division, United States Department of Justice, dated 11

August 2006).

This conclusively defines the subject matter to which Westfall Act certification and

immunity applies as being those acts by Shaw that occurred "from August 2001 until

December 2004".  This was done at a time when (as now) claims in the Complaint

alleged wrongful acts by Defendant Shaw that took place after the Department of

Defense terminated Shaw's employment.  Accordingly, the "subject matter" of the state

law claims covered by the Government's Westfall Act certificate, which the Court

dismissed for failure to exhaust FTCA remedies – is distinct from the "subject matter" of

the claims now asserted in Plaintiffs' Causes of Action Six and Seven – not only as to

time, but also as to substance.

As to time, the complained-of acts Shaw in Causes of Action Six and Seven of the

Amended Complaint occurred more than 1.5 years after the Department of Defense

terminated Shaw's employment.  Shaw made the complained-of false, malicious and

defamatory statements not as a Government employee (since the Government has

terminated its employment relationship with him long ago), but only in his individual

capacity.

Second, the substance of the complained-of activity that gave rise to the prior

state law claims on the part of Defendant Shaw consisted of: (a) Defendant Shaw

wrongfully disseminating to persons inside and outside the Department of Defense of an

inaccurate and damaging document, authored by Shaw, in which Shaw maliciously and

falsely reported that Plaintiff Sudnick had participated in a criminal conspiracy that

involved, among other things, receiving bribes; and (b) making similar oral statements to media outlets and others outside the Department of Defense. *See e.g.*, original Complaint at Paras 23-24, 54-58, 60-62.

The substance of the allegations in Amended Complaint Causes of Action Six and Seven of the Amended Complaint are distinct and independent. One-and-one-half years after the Department of Defense terminated Shaw's employment – at a time when Shaw was <u>not</u> a DoD official, Shaw does <u>not</u> discuss his past official activity. Instead he further damages Plaintiff Sudnick by stating, falsely and maliciously, in his capacity as a private citizen, that Plaintiff Sudnick <u>is at that time</u> under active criminal investigation.

This has no relationship whatsoever to any Westfall Act protection or immunity.

Additionally, Defendant Shaw's attempted assertion of Westfall Act immunity does not meet mandatory minimum legal requisites, and, thus, must be denied as legally insufficient, or, in the alternative, not ripe.

As in his prior motion to dismiss, Defendant Shaw again asserts that the Court should find – solely on the basis of the unsworn argument in his motion to dismiss rather than on his presentation of evidence – that he was acting within the scope of his employment with the Department of Defense (DoD) when he took the complained-of acts alleged in Causes of Action Six and Seven of the Amended Complaint. As such, Shaw quite without precedent asserts that the Westfall Act, 28 U.S.C. 2679(b)-(d): entitles Shaw to have the United States Government substituted for him as a defendant now, even:

(1) Without the Attorney General's 28 U.S.C. 2679(d)(1)-(2) certification of the scope of Shaw's office or employment as to these claims;

-18-

(2)  Without adhering to the statutory requirement that Shaw may only petition the Court to find and certify that he was acting within the scope of his DoD office or employment upon the Attorney General <u>refusing</u> to certify the scope of Shaw's office or employment per 28 U.S.C. 2679(d)(1)-(2);

(3)  Without presenting any <u>evidence</u> attesting that Shaw was acting within the scope of his DoD office or employment; and

(4)  Without due consideration for the clearly-stated facts of Plaintiff's claims state that Shaw's complained-of conduct was well beyond the time of his employment with DoD.

Accordingly, for each of these reasons, the Court should deny Defendant Shaw's motion to dismiss Causes of Action Six and Seven of the Amended Complaint.

<u>**CONCLUSION**</u>

Based on the foregoing, Plaintiff Sudnick respectfully requests the Court to deny Defendant Shaw's motion to dismiss as to Claims Four, Six and Seven.

DATED:  14 December 2006

Respectfully submitted,

_____/s/_____
Timothy B. Mills
D.C. Bar No. 425209
Maggs & McDermott LLC
910 17th Street, N.W.
  Suite 800
Washington, D.C. 20006
(202) 457-8090
*Attorneys for Plaintiff Daniel Sudnick*

UNITED STATES DISTRICT COURT
**FOR THE DISTRICT OF COLUMBIA**

DANIEL SUDNICK,                          )
                                         )
       Plaintiff,                )
                                         )
       v.                        )          Civil Action No.
                                         )          06-00654 (ESH)
                                         )
DEPARTMENT of DEFENSE and                )
JOHN A. SHAW,                            )
                                         )
       Defendants.               )
_____)


**[PROPOSED] ORDER**

Upon consideration of Defendant John A. Shaw's motion to dismiss Plaintiff Daniel

Sudnick's Fourth, Sixth and Seventh Causes of Action of the Amended Complaint,

Plaintiff Sudnick's opposition thereto and the record in the above-captioned case, it is

hereby:

ORDERED that the motion to dismiss is denied as to the Fourth, Sixth and Seventh

Causes of Action; and

FURTHER ORDERED, that Defendant Shaw shall file his answer to Fourth, Sixth and

Seventh Causes of Action by not later than the 20th day after the date of this Order.


Dated: _____


                            _____
                            JUDGE ELLEN S. HUVELLE
                            UNITED STATES DISTRICT JUDGE