UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DANIEL SUDNICK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | 06-00654 (ESH) |
| DEPARTMENT OF DEFENSE and | ) | |
| JOHN A. SHAW, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANT
## JOHN A. SHAW'S MOTION TO DISMISS THE AMENDED COMPLAINT

Plaintiff Sudnick has now voluntarily dismissed the most outrageous of the Amended Complaint's claims against defendant Shaw – a claim under the Ku Klux Klan Act, without any allegation of racial animus, of a civil rights conspiracy between Dr. Shaw and other unnamed federal officials against him – but nevertheless persists in maintaining three Counts against Dr. Shaw that are equally, incandescently untenable.

*First,* despite fatal preclusion, pleading, and statute of limitations defects, plaintiff asserts (in Count IV) that he may bring a Due Process Clause "Bivens" action against a private citizen to seek a declaratory judgment and injunction imposing a prior restraint of speech against that citizen. Even if plaintiff's Due Process claim could survive its preclusion, pleading, and statute of limitations problems (and, for reasons discussed below and in Dr. Shaw's opening brief, it cannot), such a claim is constitutionally repugnant. To state the claim is to dismiss it.

*Second,* plaintiff continues to assert state law defamation and false light claims (Counts VI and VII, respectively) for one alleged unpublished, post-employment statement by Dr. Shaw to the *Legal Times.* But according to plaintiff's own Amended Complaint, this alleged

statement by Dr. Shaw concerned an FBI investigation into allegations previously made during Dr. Shaw's tenure at the Department of Defense. As such, although Counts VI and VII pertain to statements made after Dr. Shaw's government employment, they still run headlong into the Westfall Act's jurisdictional bar, which precludes any "civil action or proceeding for money damages *arising out of or relating to the [government employment] subject matter . . . without regard to when the act or omission occurred*." 28 U.S.C. § 2679(b)(1) (emphasis added).

## ARGUMENT

I.  **PLAINTIFF'S "<u>BIVENS</u>" CLAIM UNDER THE DUE PROCESS CLAUSE (COUNT IV) MUST BE DISMISSED.**

    A.  **Under Well-Settled Caselaw, the Privacy Act Precludes Plaintiff's "<u>Bivens</u>" Claim.**

As an initial matter, plaintiff does not (and cannot) contest the overwhelming body of caselaw holding that the Privacy Act legislative scheme is a "special factor" precluding Due Process Clause claims, such as those asserted by plaintiff, which seek a constitutional remedy for alleged wrongful disclosure of information by the federal government and its officials.[1] Instead, Mr. Sudnick seeks to evade this long-standing rule in two ways: *first,* he argues that the Privacy Act does not afford either declaratory or injunctive relief against Dr. Shaw, and he should therefore

---

[1]  See, *e.g.*, Griffin v. Ashcroft, No. 02-5399, 2003 WL 22097940, at *2 (D.C. Cir. Sept 3, 2003) (per curiam) (dismissing constitutional claims because Privacy Act provides a "comprehensive remedial scheme"); Downie v. City of Middleburg Heights, 301 F.3d 688, 696 (6th Cir 2002) (same);  Hatfill v. Ashcroft, 404 F. Supp.2d 104 (D.D.C. 2005) (Privacy Act is a "special factor counseling hesitation against the applicability of <u>Bivens</u>"); Chung v. United States Dep't of Justice, No. Civ. 00-1912, 2001 WL 34360430, at *10 (D.D.C. Sept. 20, 2001) (noting that it is it is "improper" to permit a plaintiff to augment its claims under the Privacy Act with additional remedies under the Constitution); Blazy v. Woolsey, No. 93-2424, 1996 WL 43554, at *1 (D.D.C. Jan. 31, 1996) (claims against individual defendants dismissed: "Congress has put in place a comprehensive system to administer public rights, has 'not inadvertently omitted' damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve <u>Bivens</u> remedies." (quoting Spagnola v. Mathis, 859 F.2d 223, 228 (D.C. Cir. 1988)); Mittleman v. U.S. Treasury, 773 F. Supp. 442, 453-54 (D.D.C. 1991) ("constitutional damage claims, relating to disclosures of false information in plaintiff's records by certain defendants . . . are precluded by the Privacy Act").

be permitted to seek a Due Process Clause injunction barring Dr. Shaw from engaging in various forms of speech. See Opp. Mem. at 11-12, 30. *Second,* plaintiff argues that it is premature to dismiss his money damages Bivens claim because it is not yet clear that he will prevail (or even proceed) on his Privacy Act damages claim against the Department of Defense. Both of these arguments badly misunderstand the relevant caselaw; both should be rejected out of hand.

### 1.    The Unavailability of Delaratory and Injunctive Relief Against Dr. Shaw Under the Privacy Act Does Not Allow Plaintiff to Bring a "Bivens" Claim for Declaratory and Injunctive Relief.

Plaintiff's first argument is as simple as it is flawed: Mr. Sudnick argues that because he cannot maintain a Privacy Act claim for declaratory and injunctive relief against Dr. Shaw, the Privacy Act cannot preclude a "Bivens" action[2] under the Due Process Clause seeking such relief.

Plaintiff's argument fundamentally misapprehends the broad preclusive effect of the Privacy Act in this case because it fundamentally misunderstands why the Privacy Act is a "special factor counseling hesitation" in creating a Bivens remedy. As the Supreme Court has explained, Bivens claims are interstitial remedies forged by Courts in the absence of a congressional remedial scheme; where, on the other hand, Congress has chosen to legislate a series of remedies, the courts may not create additional Bivens-type remedies, even if those remedies are unavailable under the statute, and even if the statutory remedies are inadequate (or seem so to the plaintiff). *See* Schweiker v. Chickley, 498 U.S. 412, 423 (1988) (holding that, where Congress has provided what it considers adequate remedial mechanism for violations, additional Bivens

---

[2]    Although he calls it one, plaintiff's constitutional claim for declaratory and injunctive relief is not really a "Bivens" claim, for Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) dealt specifically with implied constitutional claims for money damages. What plaintiff really asserts in Count IV, although he does not say so, is a suit under the Due Process Clause seeking declaratory and injunctive relief against a private individual. Calling the Count IV what it really is highlights the absurdity of the claim. *See* Section I.A.2, *infra* (discussing uniform unavailability of such suits against persons in their individual capacity).

remedies may not be implied even if claims go partially or fully unremedied); United States v. Stanley, 483 U.S. 669, 683 (1987) ("[I]t is irrelevant to a special factors analysis whether the laws currently on the books afford [plaintiff] an adequate federal remedy for his injuries.").[3]  Try as he might, plaintiff cannot evade the settled caselaw from the Supreme Court, Court of Appeals, and this Court:  enactment of the Privacy Act conclusively barred the "Bivens" claims plaintiff seeks to assert here.[4]

2.    **Plaintiff May Never Assert Claims for Declaratory and Injunctive Relief under the Due Process Clause Against a Former Government Official (Such as Dr. Shaw) in His "Personal Capacity."**

Moreover, even if this Court were to conclude that plaintiff may bring constitutional claims for declaratory and injunctive relief in this case notwithstanding the Privacy Act's broad preclusive effect – and, for the reasons discussed above, he many not – those claims would still fail, because declaratory and injunctive relief under the Due Process Clause is not available against a person (whether an official or private citizen) in his or her "personal capacity."

---

[3]  See also Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 68-69 (2001) (explaining that "[s]o long as the plaintiff ha[s] an avenue for some redress" under statutory remedial scheme, "bedrock principles of separation of powers foreclose[] judicial imposition of a new substantive liability" even where there is "an absence of relief for a constitutional violation");  See, e.g., Chung v. United States Dep't of Justice, No. 00-CV-912, 2001 WL 34360430 (D.D.C. Sept. 20, 2001), aff'd in part, rev'd in part on other grounds, 333 F.3d 273, 274 (D.C. Cir. 2003) (affirming dismissal of Bivens claims: "as the district court correctly held, they are encompassed within the remedial scheme of the Privacy Act"); Griffin, 2003 WL 22097940 (citing Chung and affirming dismissal of Bivens claims because of "the Privacy Act's comprehensive remedial scheme"); Mittleman, 773 F. Supp. at 453-54 (noting that Privacy Act implemented "Congressionally-provided remedies," thereby barring Bivens constitutional claims).

[4]  For similar reasons, this court should reject plaintiff's life-support argument that dismissal of his Bivens damages claims is not yet a ripe issue. As something of an afterthought, plaintiff suggests that a motion to dismiss his Bivens claim for damages is not yet ripe because the Department of Defense has denied Privacy Act liability in this case and the Privacy Act claim thus may not go forward. See Opp. Mem. at 12-13.  As noted above, the unavailability of a Bivens remedy does not depend on whether a particular plaintiff has meritorious – or even viable – alternative Privacy Act claims.  Rather, the fact that Congress has chosen to legislate in this area and provide a set of statutory remedies is a "special factor counseling hesitation" that precludes a Bivens claim – even if plaintiff is not satisfied with those remedies or cannot prove a statutory claim under the Privacy Act.

Indeed, it appears that *every* Circuit Court of Appeals to consider the issue has rejected "personal capacity" suits for injunctive relief against government officials. *See generally* Feit v. Ward, 886 F.2d 848, 858 (7th Cir. 1989) (plaintiff's "attempt to obtain declaratory and injunctive relief from the defendants in their personal capacities fails to state a claim upon which relief may be granted and his claims were properly dismissed"); Del Raine v. Carlson, 826 F.2d F.2d 698, 703 (7th Cir. 1987); Community Mental Health Servs. of Belmont v. Mental Health and Recovery Bd., No. 04-3587, 2005 WL 2233603, at *11 (6th Cir. Sept. 14, 2005) ("a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, i.e., his official capacity); Wolfe v. Strankman, 392 F.3d 358, 360 n.2 (9th Cir. 2004 (noting that defendants were "sued in their personal capacities, but the declaratory and injunctive relief [plaintiff] seeks is only available in an official capacity suit"); Frank v. Relin, 1 F.3d 1317, 1327 (2d Cir. 1993) ("equitable relief could be obtained against [defendant] only in his official, not his individual, capacity"); *cf.* Ameritech Corp. v. McCann, 297 F.3d 582, 586-587 (7th Cir. 2002) (discussing difference between official and individual capacity suits).[5]

The touchstone of a viable Due Process Clause claim for injunctive relief is thus governmental (i.e. "official capacity") action, for it is the government's obligation – not that of people acting in their personal capacity – to provide "the process that is due" under the Due

---

[5]    Plaintiff appears to rely exclusively on a preliminary order in Hatfill v. United States, No. 03-CV-1793, a case currently pending before Judge Walton of this Court, for the proposition that a plaintiff may seek injunctive Due Process Clause relief against a former federal official (now private citizen) acting in his or her "personal capacity." *See* Opp. Mem. at 12. Plaintiff does not understand – or, at least, does not inform the Court – of the procedural posture of the Hatfill case. The original Complaint in Hatfill did not make it clear whether the plaintiff in that case sought injunctive relief against individuals in their official and/or personal capacities. Accordingly, on September 30, 2005, the individual defendants in that case moved for a more definite statement. *See* Hatfill v. Ashcroft (Dkt. # 96). Thereafter, plaintiff Hatfill amended his Complaint to make it clear that he was seeking injunctive relief on constitutional claims against the individual defendants in their personal capacity. *See* Hatfill v. Ashcroft (Dkt. # 103). The individual defendants moved to dismiss Hatfill's Amended Complaint *inter alia* on the "personal capacity" constitutional claims. *See* Hatfill v. Ashcroft (Dkt. #108). That motion has not yet been decided, and remains pending before Judge Walton.

Process Clause. A Due Process Clause violation therefore is assessed by evaluating the government's willingness and effectiveness in providing that due process, not by looking to a person in his or her "personal capacity" to provide due process of law. *See generally* <u>Trifax Corp. v. District of Columbia</u>, 314 F.3d 641, 644 (D.C. Cir. 2003) (to be actionable under Fifth Amendment, stigmatization of plaintiff must be "government stigmatization"); <u>Doe v. United States Dep't of Justice</u>, 753 F.2d 1092, 1114 (D.C. Cir. 1985) (to establish Due Process violation on a "stigmatization" theory, "the government must be the source of the defamatory allegations").

Plainly, the rule precluding suits for Due Process Clause injunctive relief against government officials in their personal capacity applies with even greater strength in the case of a *former* government official (now private citizen) like Dr. Shaw, for at this point, he can do nothing to affect governmental action – whether to commit a Due Process Clause violation or to remedy one. Put differently, injunctive[6] Due Process Clause relief is something that only the government, and government officials acting in their official capacity, can provide when and if they are enjoined. There thus is no reason (or basis) for allowing such claims to proceed against Dr. Shaw after he has retired from government service.

---

[6]  Of course, this argument applies equally to plaintiff's "<u>Bivens</u>" claim for declaratory relief, for just as in the case of an injunction, a declaratory judgment requires "a real and substantial controversy admitting of specific relief," not "an opinion advising what the law would be upon a hypothetical state of facts." <u>Federal Express Corp. v. Air Line Pilots Ass'n</u>, 67 F.3d 961, 963-964 (D.C. Cir. 1995). In the absence of any imminent (or, indeed, remote) possibility that private citizen John Shaw will commit a Due Process Clause violation in the future, Article III precludes this Court from entertaining a "personal capacity" declaratory judgment action to settle what his rights and liabilities would be if he were a government official dispensing (or withholding) due process. *See* <u>Mova Pharm. Corp. v. Shalala</u>, 140 F.3d 1060, 1073 (D.C. Cir. 1998) ("To satisfy the Constitution's case or controversy requirement, a party filing a declaratory judgment action must show that there is a controversy of 'such immediacy and reality to warrant the issuance of a declaratory judgment'") (citation omitted)). Moreover, even if this Court concluded that it could constitutionally entertain such a lawsuit (and it cannot), Dr. Shaw respectfully suggests that the Court should exercise its broad discretion to decline such a claim. *See, e.g.,* <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 287 (1995) (noting "the unique breadth of [a district court's] discretion to decline to enter a declaratory judgment"); <u>Jackson v. Culinary Sch. of Wash., Ltd.</u>, 59 F.3d 254, 256 (D.C. Cir. 1995) (noting that the Supreme Court "took great pains to emphasize the singular breadth of the district court's discretion to withhold declaratory judgment").

3.    **The Court Should Reject Plaintiff's Effort to Obtain Declaratory and Injunctive Relief Imposing a Prior Restraint of Speech on a Private Citizen.**

Finally, even if this Court were to conclude that the Privacy Act did not bar plaintiff's "Bivens" claims (and it does), and even if this Court were to conclude that plaintiff may bring declaratory and injunctive relief claims under the Due Process Clause against a former government official (and he may not), Mr. Sudnick's Due Process Clause claim would still fail because it seeks a prior restraint of speech against Dr. Shaw that is constitutionally repugnant under the First Amendment to the Constitution.

Plaintiff makes no secret of the fact that what he seeks from this Court is an order gagging Dr. Shaw, precluding him from engaging in speech that plaintiff regards as defamatory and a violation of his privacy. *See* Amended Compl. p.30 (asking that the Court "[i]ssue a permanent injunction prohibiting Defendant Shaw from ever again making any of the false and malicious representations and communications contained in the Shaw-authored 'report of investigation' described above" and "[i]ssue a permanent injunction prohibiting Defendant Shaw from ever again making any representation to anyone that Plaintiff Sudnick is under active criminal investigation of any kind"). However, it has been clear from the very first landmark Supreme Court First Amendment case of the modern era, over seventy-five years ago, that the Constitution absolutely forbids courts from imposing the type of prior restraint plaintiff seeks here. *See* Near v. Minnesota, 283 U.S. 697, 720 (1931) (establishing "the immunity of the press from previous restraint" and noting that "[s]ubsequent punishment for such abuses as may exist is the appropriate remedy, consistent with constitutional privilege"). This provides an independent reason to reject plaintiff's declaratory and injunctive relief "Bivens" claim, for this Court obviously cannot redress one alleged constitutional violation by engaging in another.

- 7 -

Since <u>Near</u>, this Court and the Court of Appeals have routinely rejected claims seeking the very type of declaratory and injunctive relief plaintiff seeks in this case. *See, e.g.,* <u>Kutash Mining Corp. v. Securities and Exchange Comm'n</u>, 198 F. Supp. 508, 510-11 (D.D.C. 1961), *aff'd,* 309 F.2d 647 (D.C. Cir. 1962) (noting "the well-settled rule of equity that equity does not enjoin a libel or slander and that the only remedy for defamation is an action for damages"); <u>Trimble v. Johnston,</u> 173 F. Supp. 651, 655 (D.D.C. 1959) ("Freedom of the press comprehends a right to print and publish and to disseminate, circulate, and distribute matters that have been printed, without prior restraint . . . but subject to the consequences of the law of libel"); <u>Hoxsey Cancer Clinic v. Folsom,</u> 155 F. Supp. 376, 378 (D.D.C. 1957) ("It is a well-settled rule of equity that equity does not enjoin a libel or slander, and that the only remedy for libel or slander is an action for damages if the libelous character of a statement to which objection is made can be established"); *cf.* <u>Leo Winter Assoc., Inc. v. Dept. of Health and Human Svcs.,</u> 497 F. Supp. 429 (D.D.C. 1980) (granting summary judgment: "Plaintiff seeks injunctive relief rather than damages. It is clear that equity does not enjoin torts"). Indeed, this Court and others do not merely reject claims such as Mr. Sudnick's "<u>Bivens</u>" Count IV – they dismiss them. *See, e.g.,* <u>Mazur v. Szporer,</u> No. 03-CV-00042, 2004 WL 1944849, at *8 n.7 (D.D.C. June 1, 2004) ("The court finds it proper to dismiss [plaintiff's] claim for injunctive relief at the motion to dismiss stage of the proceedings. Courts have dismissed complaints requesting similar injunctive relief on motions to dismiss") (collecting cases)). The Court should do the same here.

**B.    Even if a <u>Bivens</u> Claim Is Available to Plaintiff, Count IV Fails to State a "Reputation Plus" Claim for Due Process Clause Relief.**

For each of the reasons discussed above, plaintiff Sudnick may not lawfully raise the "<u>Bivens</u>" cause of action that he seeks to assert. That aside, Count IV of the Amended Complaint also fails to state such a claim. Faced with a uniform body of caselaw holding that "injury caused by the defendant to a plaintiff's reputation" does not state a constitutional claim,

<u>Davric Maine Corp. v. United States Postal Serv.</u>, 238 F.3d 58, 68-69 (1st Cir. 2001), unless plaintiff is "effectively . . . put out of business," <u>Old Dominion Dairy Prods., Inc. v. Secretary of Defense</u>, 631 F. 2d 953, 963 (D.C. Cir. 1980), "equivalent in every practical sense to formal debarment," <u>Trifax Corp. v. District of Columbia</u>, 314 F.3d 641, 644 (D.C. Cir. 2003), plaintiff asserts that his "chosen field" is "senior management positions with Government contractors and U.S. Government agencies," Opp. Mem. at 9, which involve "successively greater responsibility," *id.* at 8. This alleged failure to win "senior management" jobs hardly demonstrates the type of categorical preclusion necessary to sustain a constitutional claim.[7]

In the end, perhaps most instructive is plaintiff's utter failure to allege that he has been un- or under-employed since his supposed Due Process Clause deprivation, or, indeed, his failure to say *anything* about how he has been employed since defendant Shaw allegedly harmed him more than two years ago. Plaintiff has no Due Process Clause claim; it must be dismissed.

### C. The One-Year District of Columbia Statute of Limitations Bars Plaintiff's "Bivens" Due Process Clause Claim.

Finally, even if this Court were to conclude that Mr. Sudnick's Due Process Clause claim is available against Dr. Shaw (a former government official and now private citizen), and even if the Court were to conclude that plaintiff properly stated such a claim, Count IV would still fail for an independent reason: plaintiff failed to bring that claim within the applicable one-year statute of limitations.

In analyzing plaintiff's effort to avoid dismissal on statute of limitations grounds, it is perhaps most instructive to note those portions of Dr. Shaw's argument that plaintiff does *not*

---

[7] Given plaintiff's assertion that his "chosen field" involves "senior management positions" in government, one is surprised that plaintiff did not simply go all the way and assert that his chosen métier is to be Secretary of Defense (thwarted by the dastardly John Shaw), for under plaintiff's view of the world, this would be a sure-fire way to defeat a motion to dismiss in a market where "government employment so dominates the field of opportunity," Am. Compl. ¶ 54.

dispute. *First,* plaintiff does not dispute (nor could he) that under governing D.C. Circuit precedent, this Court must borrow the limitations period for <u>Bivens</u> claims from the most "analogous" cause of action under local law. See <u>Crocker v. Piedmont Aviation, Inc.</u>, 49 F.3d 735, 742 (D.C. Cir. 1995); <u>Doe</u>, 753 F.2d at 1114 (same); <u>Browning v. Clinton</u>, 2001 U.S. Dist. LEXIS 24537 (D.D.C. Feb. 12, 2001) ("limitations period applicable to the most nearly analogous state cause of action" applies to <u>Bivens</u> claim).[8] *Second,* plaintiff also does not dispute that the District of Columbia statute of limitations for claims alleging libel, slander, and similar intentional torts is one year under D.C. Code § 12-301(4).[9] *Third,* and finally, plaintiff does not dispute that if the one-year statute of limitations under D.C. Code § 12-301(4) applies to his <u>Bivens</u> claim, that claim is untimely for the very same reasons that his now-dismissed state-law defamation and false light invasion of privacy claims were untimely.[10]

_____

[8]    *See also* <u>McClam v. Barry</u>, 697 F.2d 366, 373 (D.C. Cir. 1983) (applying D.C. Statute of limitations "most clearly comparable" to <u>Bivens</u> claim); <u>Church of Scientology v. Foley</u>, 640 F.2d 1335, 1335 (D.C. Cir. 1981) (en banc) (per curiam).

[9]    For defamation claims, *see* <u>Church of Scientology</u>, 640 F.2d at 1338 (defamation claims subject to one-year statute of limitations under District of Columbia law); <u>Grunseth v. Marriott Corp.</u>, 872 F. Supp. 1069, 1074 (D.D.C. 1995) (same); <u>Mullin v. Washington Free Weekly, Inc.</u>, 785 A.2d 296, 298 (D.C. 2001) (same). For invasion of privacy claims, *see* <u>Grunseth</u>, 872 F. Supp. at 1074 (District of Columbia law regards invasion of privacy claims as "essentially a type of defamation" (*citing* <u>Doe v. Southeastern Univ.</u>, 732 F. Supp. 7, 8 (D.D.C. 1990)) (applying one-year statute to false light claim); <u>Mittleman</u>, 104 F.3d at 415 (applying one-year statute to false light claim); <u>Henderson v. MTV</u>, No. 05-CV-1937(EGS), 2006 WL 1193872, at *1 (D.D.C. May 3, 2006) (applying one-year statute to claim for invasion of privacy); <u>Jankovic v. International Crisis Group</u>, 429 F. Supp. 2d 165, 171 (D.D.C. 2006) (same; false light claim "intertwined" with defamation); <u>Nix v. Hoke</u>, 139 F. Supp. 2d 125, 134 n.9 (D.D.C. 2001) (one-year bar applied to invasion of privacy "in the District on the grounds that this type of claim is essentially a type of defamation").

[10]    The factual predicate underlying plaintiff's <u>Bivens</u> claim in the Amended Complaint is *identical* to the factual underpinnings of plaintiff's earlier state law defamation and invasion of privacy claims, and the <u>Bivens</u> claim fails under the one-year statute of limitations for the very same reasons. *See* Mem. in Support of Motion to Dismiss (Dkt. # 22) at Section I.B (analyzing factual allegations of Complaint and establishing that none of plaintiff's allegations of wrongdoing fell within the one-year statute of limitations period). Plaintiff never contended then – and does not contend now – that the alleged wrongful acts fell within a one-year statute of limitations period. *See generally* Mem. in Opposition to Motion to Dismiss (Dkt. #26) (not disputing that state-law claims occurred more than one year before filing, but arguing that two-year Federal Tort Claims Act statute applies after government Westfall Act substitution for Shaw).

Instead, plaintiff relies on two arguments for why his <u>Bivens</u> claims are timely: he argues that his <u>Bivens</u> claims are not akin to defamation claims and should not be treated under the same statute of limitations, and also urges this Court to adopt nebulous "policy considerations" to salvage his claim. *See* Opp. Mem. at 14-15. Both arguments are deeply flawed.

First, although plaintiff strives mightily to argue that his <u>Bivens</u> claims are not "most nearly analogous" to defamation claims, plaintiff's own Amended Complaint betrays him, for the factual allegations underpinning his <u>Bivens</u> claims are *absolutely identical* – right down to the typographical errors and mis-numbered paragraphs – to the factual allegations supporting his original defamation and false light invasion of privacy claims. The governing statute of limitations caselaw in this Circuit and this Court obviously cannot (and does not) permit a plaintiff simply to take his time-barred defamation complaint, excise all references to defamation and graft on a recitation of the <u>Bivens</u> elements, and then assert that this <u>Bivens</u> claim is not "most nearly analogous" to a defamation claim to avoid the statute of limitations.

Indeed, even if the Court were to examine the substance of the Amended Complaint (and it need not do so), it is clear that the alleged wrongful acts by the plaintiff are, in essence, defamatory statements. *See, e.g.,* Amended Compl. ¶¶ 15 (alleging "false and defamatory allegations"); 16 (alleging that Dr. Shaw "commenc[ed] a series of illegal disclosures . . . contain[ing] false and inaccurate allegations"); 23(first)-23(second) (alleging seven instances in 2004 in which Dr. Shaw allegedly made "false and defamatory" statements); 24 (alleging three "false report[s]" in the media "[a]s a consequence" of Dr. Shaw's alleged statements); 26 (alleging "illegal, defamatory disclosures"); 32 (alleging harm from "news reports of the unfounded allegations") 34 (alleging harm from "allegations that appeared in the press"); 35 (alleging "defamatory and false allegations"); 40 (alleging that defendant Shaw "knowingly falsely and maliciously published and republished . . . false representations of fact"). Plaintiff cannot flee

from his own Complaint; his <u>Bivens</u> claims are time-barred by the one-year statute of limitations, which clearly applies. *See generally* <u>Doe</u>, 753 F.2d at 1114-15 ( one-year statute applied to <u>Bivens</u> action against various Department of Justice officials which alleged "that they disseminated false and defamatory statements" which "destroyed [plaintiff's] reputation as a sober and serious person" for employment purposes: "We can discern no difference in the practicalities of the policies behind a <u>Bivens</u> action for the deprivation of a liberty interest in reputation and an ordinary defamation claim").

Finally, plaintiff also argues that "policy considerations" should preclude this Court from borrowing the most nearly analogous state statute of limitations if it is less than that provided by the Federal Tort Claims Act and Privacy Act. Opp. Mem. at 15. This argument is interesting and novel; unfortunately, it is not the law of this Circuit or any other, and should not tempt this Court to ignore settled law in this Court and the Court of Appeals, which requires the Court to apply the one-year District of Columbia statute of limitations for "most nearly analogous" state causes of action. The Court should dismiss Count IV, Mr. Sudnick's would-be <u>Bivens</u> claim.

## II.    PLAINTIFF'S STATE-LAW DEFAMATION AND INVASION OF PRIVACY CLAIMS (COUNTS VI AND VII) MUST BE DISMISSED.

Last of all, plaintiff seeks to sustain his remaining claims – state-law claims for defamation and false light invasion of privacy for one alleged statement (never published) to a *Legal Times* reporter – by arguing that the events underlying those claims are substantively and temporally distinct from Dr. Shaw's previous federal "scope of employment" as certified by the Department of Defense under the Westfall Act. *See* Opp. Mem. at 18.

Once again, plaintiff misunderstands the relevant law. Although Counts VI and VII of the Amended Complaint pertain to statements allegedly made after Dr. Shaw's government employment (and thus they are not directly addressed in the Department of Defense's certification

- 12 -

as to the scope of Dr. Shaw's government employment), the Westfall Act's jurisdictional bar is broad, and precludes not only claims arising out of acts taken *during* federal employment, but rather any "civil action or proceeding for money damages *arising out of or relating to the [government employment] subject matter . . . without regard to when the act or omission occurred.*" 28 U.S.C. § 2679(b)(1) (emphasis added). Plaintiff does not discuss this statutory language – indeed, he does not even mention it, *see* Opp. Mem. at 18-19. There is no doubt that plaintiff's alleged wrongful acts are part of a course of conduct that allegedly began while Dr. Shaw was employed by the Department of Defense; indeed, plaintiff himself alleges as much. *See* Opp. Mem. at ¶¶ 40-40a (the alleged false representations that plaintiff was under active criminal investigation were made "prior and subsequent to DoD's termination of Shaw"; such publications "include[d] but [were] not limited to" post-employment statements). As such, Count VI and VII are a "civil action or proceeding for money damages *arising out of or relating to* the [government employment] subject matter . . . without regard to when the act or omission occurred." 28 U.S.C. § 2679(b)(1) (emphasis added), and must be dismissed.

## CONCLUSION

For the foregoing reasons, defendant John A. Shaw respectfully requests that the Court issue an Order dismissing with prejudice all counts of plaintiff's Amended Complaint as to defendant Dr. Shaw.[11]

---

[11] Defendant Shaw respectfully requests that the Court dismiss all Counts of plaintiff's Complaint with prejudice, including plaintiff's obviously defective Section 1985 claim, which he has sought voluntarily to dismiss "without prejudice." Mr. Sudnick's attempted voluntary dismissal without prejudice of Count V (asserting a claim under 42 U.S.C. § 1985(3)) is ineffective, nor does it moot the Court's consideration of Dr. Shaw's motion to dismiss it. "Rule 41(a)(1)(i) does not speak of dismissing one claim in a suit; it speaks of dismissing 'an action' – which is to say, the whole case." Berthold Types Ltd. v. Adobe Sys., Inc., 242 F.3d 772, 775 (7th Cir. 2001). Accordingly, "[t]o dismiss only some counts against Federal Defendants, Plaintiff[] properly should move to amend [its] First Amended Complaint under Rule 15(a)." Bragg v. Robertson, 54 F. Supp. 2d 653, 660 (S.D.W.Va. 1999) (citing 8 MOORE'S FEDERAL PRACTICE § 41.21 [1] (3rd ed.1997); 9 Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE §

Respectfully submitted,

AEGIS LAW GROUP LLP

By:        _____/s/ Paul Rauser_____

Paul C. Rauser (D.C. Bar No. 461722)
901 F Street, N.W., Suite 500
Washington, D.C. 20004
T: 202-737-3500
F: 202-737-3330

January 5, 2007        *Attorneys for Defendant John A. Shaw*

---

2362 (1995)).  Plaintiff's purported Section 1985(3) action is hopelessly flawed, as plaintiff concedes – indeed, it is not warranted by existing law, nor a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law – and the Court need not entertain yet another amendment of Mr. Sudnick's complaint.  Instead, Count V, along with the other counts, should be dismissed with prejudice.