## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| | ) | |
| **DANIEL SUDNICK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 06-0654 (ESH)** |
| | ) | |
| **DEPARTMENT OF DEFENSE** | ) | |
| **and JOHN A. SHAW,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Daniel Sudnick, a former Senior Advisor to the Iraqi Ministry of

Communications under the Coalition Provisional Authority ("CPA"), has sued the Department of

Defense ("DoD") and Dr. John A. Shaw, a former Deputy Undersecretary of Defense and DoD

Deputy Inspector General.  Plaintiff asserts a variety of constitutional, statutory, and common law

claims relating to Shaw's disclosure to the media and to persons within and outside the

government of information falsely suggesting that plaintiff was offered or received bribes during

his tenure with the Ministry of Communications and that plaintiff is currently under active

criminal investigation in connection with these bribery allegations.  Before the Court is Shaw's

motion to dismiss plaintiff's amended complaint.  For the reasons set forth below, the Court will

grant the motion as to plaintiff's constitutional claims, but deny it as to his common law claims.

**BACKGROUND**[1]

In July 2003, plaintiff was appointed by the DoD to a limited-term position as Senior

Advisor to the Iraqi Ministry of Communications in Baghdad, Iraq. (Am. Compl. ¶ 7.) While in

that position, plaintiff participated in the selection process for the award of three licenses for the

commercial operation of cellular telephone networks in Iraq, serving as a member of the

committee that evaluated bids and made recommendations to then-CPA Administrator L. Paul

Bremer regarding the licenses. (*Id.* ¶¶ 6, 8.) Plaintiff also played a role with respect to the

structuring of a contemplated First Responder Network ("FRN") telecommunications system in

Iraq. (*See, e.g.*, *id.* ¶¶ 16, 16F, 16G.)

After the evaluation committee had made its recommendations, but before any licenses

were awarded, Shaw learned, using his DoD position, that Liberty Mobile ("Liberty"), a bidder

for a license that included private sector friends and acquaintances of Shaw, had not been

recommended for a license. (*Id.* ¶¶ 11, 12.) According to plaintiff, Shaw then commenced an

"illegal scheme" to discredit the selection decision so that Liberty would again have an

opportunity to compete for a license, including creating and releasing to the media false reports

that various CPA officials involved in the selection process had asked for or received bribes. (*Id.*

¶¶ 13-15.) Shaw also engaged in misconduct with respect to the FRN, attempting, through a

course of conduct directed at plaintiff between November 2003 and April 2004, to improperly

expand the scope of the FRN project to give his private sector friends and acquaintances

affiliated with Liberty and other companies an opportunity to build a fourth Iraq-wide cell phone

---

[1]Unless otherwise noted, the factual recitation contained herein is taken from plaintiff's
amended complaint, the allegations of which must be presumed to be true for the purpose of this
motion to dismiss.

network.  (*Id.* ¶ 16.)

At some point, plaintiff reported Shaw's misconduct to CPA Administrator Bremer and

to the DoD Inspector General (*id.* ¶ 17), after which time the CPA received demands from the

Office of the Secretary of Defense, where Shaw held his position as Deputy Undersecretary of

Defense, that plaintiff's resignation be compelled.  (*Id.* ¶ 18).  A CPA official then demanded

plaintiff's resignation, threatening that if plaintiff did not resign, he would be fired.  (*Id.*)

Plaintiff resigned on March 31, 2004.  (*Id.* ¶ 19.)

After learning of plaintiff's allegations of misconduct against him, Shaw sought to

discredit plaintiff (and thereby to assist his private sector friends in obtaining an Iraqi mobile

phone license) by disclosing to the media false information suggesting that plaintiff had been

offered or had received bribes while serving as Senior Advisor to the Ministry of

Communications.[2]  (*Id.* ¶¶ 21, 23.)  These disclosures, which plaintiff contends violated the

Privacy Act, resulted in news reports indicating that plaintiff had received bribes in connection

with the Iraq cellular phone network licensing process.  (*Id.* ¶ 24.)  Plaintiff claims that, as a

consequence of these news reports, he has been unable to find employment of the type he

enjoyed prior to Shaw's disclosures, *i.e.*, in senior management with a government agency or

private sector firm engaged in government contracting.  (*Id.* ¶¶ 32; Pl.'s Mem. in Opp'n to Def.

Shaw's Mot. to Dismiss the Am. Compl. ["Pl.'s Mem."] at 8-9.)  Plaintiff has been informed by

_____

[2]Plaintiff alleges that Shaw's disclosures included a "report of investigation" he had prepared, and that he made statements and representations of fact derived from Privacy Act records pertaining to plaintiff.  (*Id.* ¶ 21.)  The specific disclosures identified by plaintiff occurred between approximately April and June 2004 (*id.* ¶ 23); however, plaintiff also alleges that Shaw continued to publish and republish these false representations of fact both before and after his termination from employment with DoD.  (*Id.* ¶ 40.)

prospective employers in both the private and public sectors that those entities are no longer

interested in pursuing present or future financial or employment opportunities with plaintiff

because of the media reports regarding the bribes. (Am. Compl. ¶ 32.) Moreover, although the

DoD apparently has cleared plaintiff of the allegations of misconduct (*id.* ¶ 33), DoD has

declined to re-hire him in an appropriately senior-level position and has stated that the allegations

appearing in the press are the reason why it cannot do so. (*Id.* ¶ 34.) Shaw's employment with

DoD was terminated in December 2004. (*Id.* ¶ 39.)

Plaintiff filed his original complaint in April 2006, alleging that Shaw's disclosures

violated the Privacy Act and seeking damages and equitable relief against the DoD, and asserting

claims against Shaw in his individual capacity for defamation, invasion of privacy/false light, and

intentional and negligent infliction of emotional distress. (Compl. ¶¶ 41-73 & Prayer for Relief.)

The DoD answered the complaint, and Shaw moved to dismiss on the grounds that the claims

against him were time-barred and that he was immune under the Federal Employees Liability

Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, 28 U.S.C. §

2679. In August 2006, the United States moved to substitute itself for Shaw under the Westfall

Act and to dismiss the claims against him for lack of jurisdiction based on plaintiff's failure to

exhaust his administrative remedies under the Federal Tort Claims Act ("FTCA"). In support of

its motion, the United States submitted the certification of the Attorney General's designee that

Shaw "was acting within the scope of his employment as an employee of the United States at the

time of the incidents that occurred during his term of employment at the Department of Defense

from August 2001 until December 2004." (Certification of Phyllis J. Pyles.) Plaintiff did not

oppose the government's motion but requested leave to file an amended complaint to assert

additional claims against Shaw.  The Court granted the motion of the government and dismissed

plaintiff's tort claims without prejudice.

In October 2006, plaintiff filed an amended complaint which reasserts the same Privacy

Act claims against the DoD, but raises new claims against Shaw in his individual capacity.  In

particular, plaintiff alleges that Shaw violated his Fifth Amendment due process rights by

publicly stigmatizing him through a campaign of false representations, without notice or any

opportunity to be heard and without any avenue for appeal, effectively depriving plaintiff of the

ability to work in his chosen field.  (Am. Compl. ¶¶ 53-57.)  The amended complaint also asserts

new defamation and invasion of privacy/false light claims against Shaw based on the allegation

that on or about June 15, 2006, more than a year after Shaw left the DoD, he "falsely and

maliciously represent[ed] to a *Washington Legal Times* reporter . . . that [plaintiff] was under

active criminal investigation by U.S. Government criminal investigative authorities for the

allegations made by Shaw against [plaintiff]."  (*Id.* ¶¶ 40A, 65-74.)[3]  Shaw has again moved to

---

[3]The amended complaint also includes a claim against Shaw for conspiracy to deprive
plaintiff of the equal protection of the laws of the United States, pursuant to 42 U.S.C. § 1985(3).
(Am. Compl. ¶¶ 58-64.)  In December 2006, after Shaw filed his motion to dismiss, plaintiff filed
a notice voluntarily dismissing his conspiracy claim without prejudice pursuant to Federal Rule
of Civil Procedure 41.  Shaw objects to the dismissal of the claim without prejudice, asserting
that the claim is "obviously defective" and that Rule 41(a)(1)(i) does not permit a plaintiff to
voluntarily dismiss only a portion of a civil action.  (Def. Shaw's Reply Mem. in Support of Mot.
to Dismiss the Am. Compl. ["Def.'s Reply"] at 13-14 n.11.)  Defendant is correct that Rule
41(a)(1)(i), which permits the voluntary dismissal of "an *action*," cannot be invoked to eliminate
"fewer than all of the *claims* against any particular defendant."  8 *Moore's Federal Practice* §
41.21[1] (3d ed. 1997) (emphasis added).  Moreover, since plaintiff does not allege that "'some
racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the
conspirators' action,'" plaintiff cannot state a claim under 42 U.S.C. § 1985(3).  *LaRouche v.
Fowler*, 152 F.3d 974, 987 n.14 (D.C. Cir. 1998) (quoting *Bray v. Alexandria Women's Health
Clinic*, 506 U.S. 263, 267-68 (1993)) (alteration in original).  The Court will therefore dismiss
Count V of the amended complaint with prejudice.

dismiss the claims against him.

## ANALYSIS

### I.    Standard of Review

Shaw moves to dismiss the amended complaint for lack of subject matter jurisdiction and

for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Under Rule 12(b)(6), dismissal is appropriate only where a defendant has "show[n] 'beyond

doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

to relief.'" *In re Swine Flu Immunization Prod. Liab. Litig.*, 880 F.2d 1439, 1442 (D.C. Cir.

1989) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The allegations in plaintiff's

complaint are presumed true, and all reasonable factual inferences are construed in the plaintiff's

favor.  *See Maljack Prods., Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F.3d 373, 375 (D.C. Cir.

1995).  Likewise, on a motion to dismiss for lack of subject matter jurisdiction, the Court must

accept all of the factual allegations in the complaint as true.  *Jerome Stevens Pharm., Inc. v.*

*FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Where necessary, the Court may also consider

material outside of the pleadings.  *Id.*

### II.    The Westfall Act

Shaw first argues that both plaintiff's constitutional claims and his common law tort

claims are barred by the Westfall Act and should therefore be dismissed for lack of subject matter

jurisdiction.  The Westfall Act "accords federal employees absolute immunity from common-law

tort claims arising out of acts they undertake in the course of their official duties."  *Osborn v.*

*Haley*, __ S. Ct. __, 2007 WL 135830, at *4 (Jan. 22, 2007).  The Act permits the Attorney

General to certify that a federal employee against whom a tort claim has been asserted "was

acting within the scope of his office or employment at the time of the incident out of which the

claim arose." 28 U.S.C. § 2679(d)(1).  Upon such certification, the action "shall be deemed an

action against the United States under the provisions of this title and all references thereto, and

the United States shall be substituted as the party defendant." *Id.*  Once the United States is

substituted, the plaintiff's exclusive remedy is under the FTCA:

> The remedy against the United States provided by [the FTCA] for injury or
> loss of property, or personal injury or death arising or resulting from the
> negligent or wrongful act or omission of any employee of the Government
> while acting within the scope of his office or employment is exclusive of
> any other civil action or proceeding for money damages by reason of the
> same subject matter against the employee whose act or omission gave rise
> to the claim or against the estate of such employee.  Any other civil action
> or proceeding for money damages arising out of or relating to the same
> subject matter against the employee or the employee's estate is precluded
> without regard to when the act or omission occurred.

28 U.S.C. § 2679(b)(1).

The foregoing exclusive remedy provision is subject to two exceptions.  The FTCA "is

*not* the exclusive remedy for torts committed by Government employees in the scope of their

employment when an injured plaintiff brings: (1) a *Bivens* action, seeking damages for a

constitutional violation by a Government employee; or (2) an action under a federal statute that

authorizes recovery against a Government employee." *United States v. Smith*, 499 U.S. 160,

166-67 (1991) (emphasis in original; footnote omitted); *see also* 28 U.S.C. § 2679(b)(2).

### A.     Fifth Amendment Due Process Claim – Count IV

Even though constitutional claims are expressly excepted from the Westfall Act's

exclusive remedy provision, Shaw nonetheless argues that the Act bars plaintiff's Fifth

Amendment claim because it is based on the same factual allegations as his earlier defamation

claim.  (Def. Shaw's Mem. in Support of Mot. to Dismiss the Am. Compl. ["Def.'s Mem."] at 7-9.)  This argument contradicts the plain language of the statue, which contains no such limitation but instead provides that the exclusive remedy provision "does not extend or apply to a civil action against an employee of the Government . . . which is brought for a violation of the Constitution of the United States."  28 U.S.C. § 2679(b)(2)(A).  Shaw asserts that he is unaware of any case in which a court has permitted a constitutional claim to proceed while holding other claims arising out of the same facts to be barred by the Westfall Act.  (Def.'s Mem. at 9.)  But a single set of facts often gives rise to multiple causes of action, and in such instances, "courts routinely order Westfall Act substitution of the United States as the defendant for state law claims when both state law and federal constitutional damage claims are asserted against federal employees."  *Vélez-Díaz v. Vega-Irizarry*, 421 F.3d 71, 76 (1st Cir. 2005); *see also Simpkins v. District of Columbia*, 108 F.3d 366, 368 & n.1 (D.C. Cir. 1997) (where plaintiff asserted constitutional and common law tort claims based on the release of a report that harmed his reputation, United States was substituted for individual defendant on the common law tort claims while individual "remained a defendant to the extent the complaint asserted constitutional tort claims against him").  Accordingly, the Westfall Act does not bar Count IV.

> **B.    Defamation and Invasion of Privacy/False Light Claims – Counts VI and VII**

In his original complaint, plaintiff asserted claims for defamation, false light, and intentional and negligent infliction of emotional distress against Shaw based on Shaw's disclosures to the media and based on allegations that he "verbally published and republished" these false statements of fact to "U.S. Government officials and persons outside the U.S. Government."  (Compl. ¶ 55; *see also id.* ¶¶ 54, 60, 64, 71.)  These claims were dismissed based

on plaintiff's failure to exhaust administrative remedies after the United States certified that

Shaw had been "acting within the scope of his employment as an employee of the United States

. . . from August 2001 until December 2004" (Certification of Phyllis J. Pyles) and moved to

substitute itself for Shaw under the Westfall Act.[4]  *Sudnick v. Dep't of Defense*, No. 06-654,

Order (D.D.C. Sept. 7, 2006).

In his amended complaint, plaintiff again asserts defamation and false light claims against

Shaw, this time based on the new allegation that Shaw

> falsely and maliciously represent[ed] to a *Washington Legal Times*
> reporter, on or about 15 June 2006, that [plaintiff] was under active
> criminal investigation by U.S. Government criminal investigative
> authorities for the allegations made by Shaw against [plaintiff], when in
> fact such representation was not true and either was known or should have
> been known to Defendant Shaw to be not true.

(Am. Compl. ¶ 40A; *see also id.* ¶¶ 66, 72.)  Shaw argues that the Westfall Act's exclusive

remedy provision bars these new tort claims because the representation by Shaw on which the

claims are based is part of the same course of conduct as Shaw's disclosures while at DoD, and

the claims therefore "aris[e] out of" and "relate to" the "same subject matter" as plaintiff's earlier

---

[4]Because plaintiff alleged that Shaw's publications and republications of the false
statements occurred both before and after Shaw's employment with DoD was terminated
(Compl. ¶ 40), the Government specifically limited its certification to Shaw's term of
employment at DoD "from August 2001 until December 2004." (Certification of Phyllis J.
Pyles.)  In granting the United States' motion, the Court ordered that the United States be
substituted as a defendant "as to each and every claim in this matter asserted against John Shaw
in the Complaint relating to incidents that occurred during the term of John Shaw's employment
by the Department of Defense from August 2001 through December 2004." *Sudnick*, No. 06-
654, Order (D.D.C. Sept. 7, 2006).  As is clear, the United States did not seek to be substituted
for Shaw, and the Court did not order the United States substituted, to the extent that plaintiff's
claims concerned conduct by Shaw following the conclusion of his DoD employment. (United
States' Mem. of Law in Support of Mot. to Substitute and to Dismiss at 4 n.3 ("To the extent that
the Complaint is read as encompassing claims arising after Shaw's Defense Department service,
. . . this motion does not relate to such post-employment allegations.").)

tort claims, for which the United States has been substituted as a defendant. (Def.'s Mem. at 10-11 (quoting 28 U.S.C. § 2679(b)(1)).) That the representation on which the new tort claims are based was made by Shaw more than a year after he left DoD is immaterial, according to Shaw, because the statute precludes actions arising out of or relating to the same subject matter as a claim for which the United States has been substituted "without regard to when the act or omission occurred." (*Id.*)

The Court cannot agree. The earlier tort claims were based on Shaw's statements about events in 2003 and 2004 -- that plaintiff was offered or received bribes during that time frame while serving in Iraq. (*See* Compl. ¶ 40.) The new tort claims, in contrast, are based on statements by Shaw about events in June 2006 -- that plaintiff was then under active criminal investigation regarding the bribery allegations. (Am. Compl. ¶¶ 40A, 66, 72.) Therefore, these statements do not relate to the same subject matter, and, as a result, Counts VI and VII are not barred by the Westfall Act.[5]

## III.    Fifth Amendment Due Process Claim – Count IV

For his Fifth Amendment claim, plaintiff alleges that Shaw violated his due process rights by "publicly stigmatizing [plaintiff] through a campaign of making false representations and allegations against [plaintiff] within and outside of DoD, including to print and broadcast

---

[5]Because the Court finds that plaintiff's new tort claims do not relate to the same subject matter as the earlier tort claims, the Court need not decide the apparently novel question whether, if the claims did concern the same subject matter, the Westfall Act would immunize Shaw even though the conduct underlying the later claims occurred after Shaw's federal employment and thus at a time when Shaw could not have been acting within the scope of his office or employment. *Cf. Arthur v. United States*, 45 F.3d 292, 296 n.2 (9th Cir. 1995) (suggesting that former federal employee "may have to defend herself against . . . claims concerning post-employment conduct").

media." (Am. Compl. ¶ 55.) Plaintiff asserts that these disclosures, made "without notice or any

opportunity to be heard and without any avenue for appeal," deprived him of the liberty to work

in his chosen field as a senior manager in a government agency or private sector government

contracting firm. (*Id.*; Pl.'s Mem. at 8-9.) Plaintiff seeks relief against Shaw solely in his

individual capacity, including damages pursuant to *Bivens v. Six Unknown Named Agents of*

*Federal Bureau of Narcotics*, 403 U.S. 388 (1971), as well as declaratory and injunctive relief

aimed at preventing future constitutional violations. (Am. Compl. ¶ 57 & Prayer for Relief

(Shaw).) Shaw argues that plaintiff's constitutional claims should be dismissed because the

amended complaint fails to allege a violation of a constitutionally protected liberty interest and

because none of the remedies that plaintiff seeks against Shaw is available. (*See* Def.'s Mem. at

13-15; Def.'s Reply at 2-6.) The Court need not address the former claim, for even assuming that

plaintiff has alleged a constitutional violation, his claims under the Fifth Amendment

nevertheless must be dismissed because no *Bivens* remedy is available in light of the remedial

scheme provided by the Privacy Act and because plaintiff lacks standing to pursue prospective

equitable relief against Shaw.[6]

A.    *Bivens* **Remedy**

In *Bivens*, the Supreme Court recognized a private cause of action for damages against

federal officers alleged to have violated a plaintiff's Fourth Amendment rights. 403 U.S. at 397.

In so holding, the Court noted that the case involved no "special factors counseling hesitation in

the absence of affirmative action by Congress" and that there had been "no explicit congressional

---

[6]Given the resolution of this issue, the Court also need not decide whether plaintiff's constitutional claims are subject to a one-year statute of limitations and, if so, whether the claims are time-barred. (*See* Def.'s Mem. at 19-22.)

declaration that persons injured by a federal officer's violation of the Fourth Amendment may

not recover money damages from the agents, but must instead be remitted to another remedy,

equally effective in the view of Congress." *Id.* at 396-97.  Since *Bivens* was decided, the

Supreme Court has "responded cautiously to suggestions that *Bivens* remedies be extended into

new contexts." *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988).  In particular, the Court has

found the existence of a "statutory system of 'comprehensive procedural and substantive

provisions giving meaningful remedies against the United States' . . . to constitute a 'special

factor' [counseling] hesitation against creating a *Bivens* remedy." *Spagnola v. Mathis*, 859 F.2d

223, 226 (D.C. Cir. 1988) (quoting *Bush v. Lucas*, 462 U.S. 367, 368, 389-90 (1983)).  Thus, the

Court has declined to create additional *Bivens* remedies "[w]hen the design of a Government

program suggests that Congress has provided what it considers adequate remedial mechanisms

for constitutional violations that may occur in the course of its administration." *Schweiker*, 487

U.S. at 423.

　　According to Shaw, the Privacy Act constitutes the kind of comprehensive statutory

scheme that precludes a *Bivens* remedy here.  (Def.'s Mem. at 14-15.)  Although plaintiff does

not concede the point, he does not seriously dispute it either, instead arguing that the issue is not

yet ripe because it remains to be seen whether he has a viable claim for monetary relief under the

Privacy Act.  (*See* Pl.'s Mem. at 12-14 & n.1.)  Plaintiff also asserts that he does not agree that

the Privacy Act "provides a comprehensive statutory scheme of remedies that will compensate

him adequately for the harm caused by Defendant Shaw's *Bivens* violations." (*Id.* at 14.)  But

whether the Privacy Act will afford plaintiff "complete" relief is not the question.  Rather, "it is

the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies

extended thereunder, that counsels judicial abstention." *Spagnola*, 859 F.2d at 227; *see also*

*Schweiker*, 487 U.S. at 425 (declining to create a *Bivens* remedy for due process violations in

denial of Social Security disability benefits even though "Congress ha[d] failed to provide for

'complete relief,'" where Congress had provided meaningful safeguards and remedies for the

rights of persons similarly situated to respondents).

    In *Chung v. United States Department of Justice*, 333 F.3d 273, 274 (D.C. Cir. 2003), the

D.C. Circuit held that a *Bivens* remedy is unavailable for constitutional claims "encompassed

within the remedial scheme of the Privacy Act." The plaintiff in *Chung* had asserted *Bivens*

claims against five unknown Justice Department officials who allegedly had violated his First

and Fifth Amendment rights by leaking to the media information protected by the Privacy Act.

*Chung v. U.S. Dep't of Justice*, No. 00-1912, 2001 WL 34360430, at *1-2 (D.D.C. Sept. 20,

2001), *aff'd in part and rev'd in part*, 333 F.3d 273 (D.C. Cir. 2003). The district court

dismissed the claims, declining to recognize a *Bivens* remedy in light of the Privacy Act's

comprehensive remedial structure. *Id.* at *12. In so holding, the Court observed that while the

Act does not provide a remedy against individuals who violate its terms, it provides significant

remedies against the offending agency, including damages and attorney's fees for intentional or

willful disclosures. *Id.* at *10; *see also* 5 U.S.C. § 552a(g)(4). The Court also noted that the

congressional findings and purposes in support of the Privacy Act made clear that "constitutional

implications and concerns respecting privacy matters" were part of the reason for the statute's

enactment and therefore rejected the contention that Congress did not intend the Privacy Act to

encompass constitutional claims. *Chung*, 2001 WL 34360430, at *11 (congressional findings

included finding that "the opportunities for an individual to secure employment, insurance, and

credit, *and his right to due process, and other legal protections* are endangered by the misuse of

certain information systems") (quoting Privacy Act of 1974, Pub. L. No. 93-579, § 2, 88 Stat.

1896 (Dec. 31, 1974)) (emphasis added).  On appeal, the D.C. Circuit affirmed the dismissal of

the plaintiff's *Bivens* claims, agreeing that those claims were "encompassed within the remedial

scheme of the Privacy Act."  333 F.3d at 274.[7]

The D.C. Circuit's decision in *Chung* forecloses a *Bivens* remedy for the constitutional

violation alleged in this case.  Here, as in *Chung*, plaintiff's *Bivens* claim is based entirely on

Shaw's alleged disclosure of "Privacy Act-covered information pertaining to [plaintiff]."  (Am.

Compl. ¶¶ 21, 55.)  Since the Act is a comprehensive statutory scheme that provides meaningful

remedies for the kind of wrong plaintiff alleges, plaintiff may not proceed under *Bivens*.

**B.       Declaratory and Injunctive Relief**

In addition to damages, plaintiff also seeks prospective injunctive relief against Shaw in

his individual capacity.  Plaintiff requests a permanent injunction prohibiting Shaw "from

violating [plaintiff's] constitutional rights under the Fifth Amendment" and from "ever again

making" any of the "false and malicious representations and communications contained in the

Shaw-authored 'report of investigation' described above" or "any representation to anyone that

[plaintiff] is under active criminal investigation of any kind."  (Am. Compl., Prayer for Relief

(Shaw) ¶¶ 3-5.)  Plaintiff also seeks a declaratory judgment that Shaw's conduct "violated

[plaintiff's] constitutional rights under the Fifth Amendment."  (Am. Compl., Prayer for Relief

---

[7]Courts in a number of other jurisdiction have also concluded that a *Bivens* remedy is
unavailable for constitutional violations arising out of the wrongful disclosure of government
records.  *E.g.*, *Downie v. City of Middleburg Heights*, 301 F.3d 688, 698-99 (6th Cir. 2002);
*Sullivan v. U.S. Postal Serv.*, 944 F. Supp. 191, 195-96 (W.D.N.Y. 1996); *Williams v. Dep't of
Veteran Affairs*, 879 F. Supp. 578, 587-88 (E.D. Va. 1995).

(Shaw) ¶ 1.)

In order to satisfy Article III's "case or controversy" requirement, a plaintiff seeking such prospective relief must show that there is a "real and immediate threat" that he will again be subject to the same official conduct. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-07 (1983); *see also Haase v. Sessions*, 835 F.2d 902, 911 (D.C. Cir. 1987) (standing analysis in *Lyons* applies to claims for declaratory relief). Because plaintiff has not alleged that it is likely that his constitutional rights will again be violated by Shaw, plaintiff lacks standing to pursue this type of equitable relief.

Plaintiff alleges that Shaw violated his constitutional rights by publicly stigmatizing him through a series of misrepresentations, made in Shaw's capacity as a Deputy Undersecretary of Defense and a DoD Deputy Inspector General, that plaintiff accepted bribes while in Iraq. (Am. Compl. ¶¶ 22, 23, 55.) That the misrepresentations were made by Shaw in his capacity as a DoD official is an integral part of plaintiff's constitutional claim. For defamatory statements to be actionable under the Constitution, "the government must be the source of the defamatory allegations." *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1108 (D.C. Cir. 1985).

Although plaintiff alleges that Shaw has continued to publish and republish the false representations regarding plaintiff (Am. Compl. ¶ 40), this allegation does not show that plaintiff is likely to suffer future injury "as the result of the challenged official conduct." *Lyons*, 461 U.S. at 102. As noted, Shaw is no longer employed by the DoD. (Am. Compl. ¶ 39.) Nor is he alleged to have acted under color of law at any time since his DoD employment was terminated. To the contrary, plaintiff asserts that Shaw made the post-termination defamatory statements "*not as a Government employee,*" but "in his capacity as a private citizen." (Pl.'s Mem. at 17-18

(emphasis in original); *see also* Am. Compl. ¶ 40 (alleging that Shaw's post-termination publications and republications of false statements regarding plaintiff were done "in other than his official[] capacity").)  Shaw may well be in a position to injure plaintiff's reputation by making such statements; however, he is no longer in a position to violate plaintiff's constitutional rights.[8]  Because plaintiff has not alleged that there is a "real and immediate threat" that he will again be subject to government stigmatization, plaintiff lacks standing to seek the declaratory and injunctive relief alleged in the amended complaint.  *See Lyons*, 461 U.S. at 105 (plaintiff who had been subjected to an allegedly unconstitutional chokehold lacked standing to seek injunction against this practice where plaintiff could not show he was likely to suffer future injury from the same official practice).[9]

**CONCLUSION**

For the reasons set forth above, the Court will grant Shaw's motion to dismiss as to plaintiff's constitutional claims (Counts IV and V), but deny the motion as to the claims for defamation and invasion of privacy/false light (Counts VI and VII).

---

[8]Plaintiff seeks injunctive relief only as a remedy for Shaw's alleged constitutional violation.  (*Compare* Am. Compl. ¶ 57, *with id.* ¶¶ 70, 74.)

[9]Plaintiff's reliance on *Hatfill v. Ashcroft*, 404 F. Supp. 2d 104, 121 (D.D.C. 2005), in which the Court dismissed the plaintiff's *Bivens* claim for violation of his Fifth Amendment rights based on government stigmatization but remanded the plaintiff's claims for declaratory and injunctive relief stemming from the same constitutional violation, is misplaced.  (*See* Pl.'s Mem. at 12.)  The individual defendants in *Hatfill* had not argued that declaratory and injunctive relief were unavailable against them in their individual capacities at the time the decision cited by plaintiff was issued.  Rather, the individual defendants subsequently raised that argument in response to an amended complaint that clarified that the plaintiff was seeking declaratory and injunctive relief against the defendants in their individual capacities.  The district court has yet to resolve the issue.

_____/s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date: February 8, 2007